**UNITED STATES DISTRICT COURT**
**Northern District of California**
**1301 Clay Street**
**Oakland, California 94612**

www.cand.uscourts.gov

Richard W. Wieking
Clerk

General Court Number
510.637.3530

April 1, 2008

**FILED**

APR - 9 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

U.S. District Court, Southern District of CA
4290 Edward J. Schwartz Federal Building
880 Front Street
San Diego, CA 92101-8900

RE: CV 07-06375 SBA  LESLIE A. BYRD-v-ROBERT J. HERNANDEZ

Dear Clerk,

'08 CV 0651 JM AJB

Pursuant to an order transferring the above captioned case to your court, transmitted herewith
are:

2254 ✓   1983

FILING FEE PAID

Yes ✓   No

IFP MOTION FILED

Yes   No ✓

COPIES SENT TO

Court ✓   ProSe

    ☒    Certified copy of docket entries.

    ☒    Certified copy of Transferral Order.

    ☒    Original case file documents.

    ☒    Please access the electronic case file for additional pleadings you may need.  See
the attached instructions for details.

Please acknowledge receipt of the above documents on the attached copy of this letter.

Sincerely,
RICHARD W. WIEKING, Clerk

by: Jessie Mosley
Case Systems Administrator

Enclosures
Copies to counsel of record

I hereby certify that the annexed
instrument is a true and correct copy of
the original on file in my office.
ATTEST:
RICHARD W. WIEKING
Clerk, U.S. District Court
Northern District of California

By_____
   Deputy Clerk
Date_____

*E- FILED*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MAR 1 4 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

LESLIE A. BYRD,

        Petitioner,

v.

ROBERT J. HERNANDEZ, Warden,

        Respondent.
_____/

No. C 07-06375 SBA (PR)

**ORDER OF TRANSFER**

#4

        Petitioner, a state prisoner, has filed a <u>pro se</u> petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging as a violation of his constitutional rights the denial of parole by the California Board of Parole Hearings.[1]  He has paid the filing fee.

        A petition for a writ of habeas corpus filed by a state prisoner in a State that contains two or more federal judicial districts may be filed in either the district of confinement or the district of conviction.  <u>See</u> 28 U.S.C. § 2241(d).  The district court where the petition is filed, however, may transfer the petition to the other district in the furtherance of justice.  <u>See id.</u>  Federal courts in California traditionally have chosen to hear petitions challenging a conviction or sentence in the district of conviction.  <u>See</u> <u>Dannenberg v. Ingle</u>, 831 F. Supp. 767, 767 (N.D. Cal. 1993); <u>Laue v. Nelson</u>, 279 F. Supp. 265, 266 (N.D. Cal. 1968).  But if a habeas petition is directed to the manner in which a sentence is being executed, e.g., if it involves parole or time credit claims, the district of confinement is the preferable forum.  <u>See</u> Habeas L.R. 2254-3(a); <u>Dunne v. Henman</u>, 875 F.2d 244, 249 (9th Cir. 1989).

        Petitioner is incarcerated at the R.J. Donovan Correctional Facility, which lies within the venue of the Southern District of California.  <u>See</u> 28 U.S.C. § 84.  Because Petitioner challenges the execution of his sentence, the Court hereby ORDERS that pursuant to 28 U.S.C. § 1404(a) and

United States District Court
For the Northern District of California

_____

[1] The Board of Prison Terms was abolished effective July 1, 2005, and replaced with the Board of Parole Hearings. Cal. Penal Code § 5075(a).

Entered on Civil Docket 3/14/08

1   Habeas L.R. 2254-3(b), and in the interests of justice, this petition be TRANSFERRED to the

2   United States District Court for the Southern District of California.

3          IT IS SO ORDERED.

4

5   DATED:  3/13/08                                    _Saundra B Armstrong_
                                                       SAUNDRA BROWN ARMSTRONG
6                                                      United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

1

2   UNITED STATES DISTRICT COURT

3   FOR THE

4   NORTHERN DISTRICT OF CALIFORNIA

5

6

7   LESLIE A. BYRD,                          Case Number: CV07-06375 SBA

8           Plaintiff,                       **CERTIFICATE OF SERVICE**

9   v.

10  ROBERT J. HERNANDEZ et al,

11          Defendant.                    /

12

13  I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District
    Court, Northern District of California.

14
    That on March 14, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said
15  copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said
    envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle
16  located in the Clerk's office.

17

18
    Leslie A. Byrd D-30420
19  R.J. Donovan Correctional Facility
    480 Alta Rd.
20  San Diego, CA 92179

21  Dated: March 14, 2008
                                            Richard W. Wieking, Clerk
22                                          By: LISA R CLARK, Deputy Clerk

23

24

25

26

27

28
    P:\PRO-SE\SBA\HC.07\Byrd6375.Transfer.wpd 3

---

United States District Court
For the Northern District of California

CLOSED, E-Filing, HABEAS, ProSe, TRANSF

# U.S. District Court
## California Northern District (Oakland)
## CIVIL DOCKET FOR CASE #: 4:07-cv-06375-SBA
## Internal Use Only

Byrd v. Hernandez
Assigned to: Hon. Saundra Brown Armstrong
Cause: 28:2254 Petition for Writ of Habeas Corpus (State)

Date Filed: 12/17/2007
Date Terminated: 03/14/2008
Jury Demand: None
Nature of Suit: 530 Habeas Corpus (General)
Jurisdiction: Federal Question

**Petitioner**

**Leslie A. Byrd**

represented by **Leslie A. Byrd**
D-30420
R.J. Donovan Correctional Facility
480 Alta Rd.
San Diego, CA 92179
PRO SE

V.

**Respondent**

**Robert J. Hernandez**
*Warden, RJDCF, et al.*

I hereby certify that the annexed
instrument is a true and correct copy of
the original on file in my office.
ATTEST
RICHARD W. WIEKING
Clerk, U.S. District Court
Northern District of California
By
Deputy Clerk
Date 4/1/08

| Date Filed | # | Select all / clear | Docket Text |
|---|---|---|---|
| 12/17/2007 | ❶1 | ☐ 2.0437 MB | PETITION for Writ of Habeas Corpus; No Process (Filing fee $ 5.00., Receipt No. 34611013624). Filed byLeslie A. Byrd. (jlm, COURT STAFF) (Filed on 12/17/2007) (Entered: 12/20/2007) |
| 12/17/2007 | ❶2 | ☐ 5.045263 MB | EXHIBITS 1-9 re 1 Petition for Writ of Habeas Corpus filed by Leslie A. Byrd. (Attachments: # 1 Exhibit 2, Part 1, # 2 Exhibit 2, Part 2, # 3 Exhibit 3-9)(Related document(s) 1 ) (jlm, COURT STAFF) (Filed on 12/17/2007) Modified on 12/21/2007 (jlm, COURT STAFF). (Entered: 12/20/2007) |
| 12/17/2007 | ❶3 | ☐ 4.540014 | EXHIBITS 10-18 re 1 Petition for Writ of Habeas Corpus filed by Leslie A. Byrd. (Attachments: # 1 Exhibits 10-18)(Related document(s) 1 ) (jlm, COURT STAFF) (Filed on 12/17/2007) |

| | | MB | Modified on 12/21/2007 (jlm, COURT STAFF). (Entered: 12/20/2007) |
|---|---|---|---|
| 12/17/2007 | ● | | CASE DESIGNATED for Electronic Filing. (jlm, COURT STAFF) (Filed on 12/17/2007) (Entered: 12/20/2007) |
| 03/14/2008 | ●4 | ☐ 21.296 KB | ORDER TRANSFERRING CASE.. Signed by Judge ARMSTRONG on 3/13/08. (lrc, COURT STAFF) (Filed on 3/14/2008) (Entered: 03/14/2008) |
| 04/01/2008 | ●5 | ☐ 13.386 KB | CLERK'S NOTICE of Transferral of Court file documents to the U.S. District Court, Southern District of CA (San Diego). Petitioner notified. (jlm, COURT STAFF) (Filed on 4/1/2008) (Entered: 04/01/2008) |

[ View Selected ]

or

[ Download Selected ]

Total filesize of selected documents (MB):
Maximum filesize allowed (MB): 10

**PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

Name ___BYRD_____LESLIE___ E-filing __A._____

      (Last)           (First)        (Initial)

Prison Number ___D-30420_____

Institutional Address ___480 Alta Rd., San Diego, CA 92179___

**FILED**

DEC 1 7 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LESLIE ARTHUR BYRD | **CV 07    6375** |
| Full Name of Petitioner | Case No. _____ |
| | (To be supplied by the Clerk, U.S. District Court) |
| vs. | **(PR)** |
| | **SBA** |
| ROBERT J. HERNANEZ, Warden, RJDCF et al. | PETITION FOR WRIT OF HABEAS CORPUS |
| Name of Respondent | |
| (Warden or jailor) | |

## Read Comments Carefully Before Filling In

__When and Where to File__

    You should file in the Northern District if you were convicted and sentenced in one of these counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma.

    If you file in the Northern District because you are now in a prison in this District but you were not convicted and sentenced in one of the above-named fifteen counties, your petition will likely be transferred to the United States District Court in which is located the State court which convicted and sentenced you. The Federal District Courts in California prefer that a petition should be considered in the district of conviction and sentencing. The records can be more easily consulted and witnesses are available if a hearing is necessary.

    If you were convicted and sentenced and are not now in a prison in the Northern District, do not file in this District. If you do, your petition will be denied for lack of jurisdiction of the subject matter and you will have to refile in the district of sentencing.

## Who To Name As Respondent

You must name the person in whose actual custody you are. This usually means the warden or jailor. Do not name the State of California, a city, a county, or the superior court of the county in which you are imprisoned or by whom you were convicted and sentenced. These are not proper respondents.

If you are not presently in custody pursuant to the State judgment against which you seek relief but may be subject to such custody in the future (e.g. detainers), you must name the person in whose custody you are now and the attorney general of the State in which the judgment which you seek to attack was entered.

## PART A                    JURISDICTION

The federal district court can only consider your petition if you satisfy certain jurisdictional requirements. The information below will allow the court to determine whether those requirements are met.

1. For what crime were you sentenced? (If you seek habeas corpus based upon a sentence for more than one crime, list each crime sparately, using Penal Code numbers if known. If you are seeking habeas corpus as to more than one sentence, a different petition should be filed for each sentence.

Second Degree Murder  P.C. 187

(Note:  Petitioner is appealing his Board of Prison Terms 2006 Hearing)

2. The sentence from which you seek relief is as follows:

(a) Name and location of court which imposed sentence (for example, Alameda County Superior Court, Oakland):

| Marin County Superior Court | Marin County, California |
|---|---|
| Court | Location |

(b) Case number, if known _____ 9635 _____

(c) Date and terms of sentence _____ 1986 - 15 Years to Life _____

(d) Are you now in custody serving this term? Yes / X /    No /__/

(Custody means being in jail, on parole or probation. You are not in custody if you are released on bail, on your own recognizance or if there is a stay of execution of sentence.)

Where?  R. J. Donovan Correctional Facility    480 Alta Rd. San Diego, CA 92179
        (Name of Institution)                  (Address)

3. What post-conviction relief have you sought?

## APPEAL

(a)  Did you take an appeal from your conviction?    Yes /X̲7    No /__7

(b)  To what court(s)?    Check

Court of Appeal        Yes /X̲7    No /__7    <u>1986</u>        <u>Denied</u>
                                              (Give year)    (Result)

Supreme Court of
California             Yes /X̲7    No /__7    <u>Year Unknown</u>    <u>Denied</u>
                                              (Give year)    (Result)

Any other court        <u>Federal District Court    and 9th Circuit Court</u>
                              (Give name and year:   Result)

(c)  If you appealed, were the grounds the same as those which will be set
     forth in this petition?    Yes /__7    No /X̲7

(d)  Was any opinion rendered?    Yes /X̲7    No /__7

(e)  If you did not appeal, what were your reasons?  N/A

_____

_____

_____

(f)  Did you seek permission to file a late appeal under Rule 31(a)?

     Yes /__7    No /X̲7

If you answered "Yes" give _____
                                       (Name of Court)

_____
                              (and result)

OTHER POST-CONVICTION REVIEW

(g)  Other than appeals, have you previously filed any petitions, appli-
     cations or motions with respect to t is conviction in any court,
     state or federal?    Yes /X̲7    No /__7

(h)  If you answered "Yes" give the following information about each
proceeding.  (Use back side of this page if you need more space.
Fill in the same questions for each.)

1.  Name of Court  <u>Marin County Superior Court</u>

    Type of Proceeding  <u>Writ of Habeas Corpus</u>

**Grounds raised (Be brief and specific):**

a. The Board's Decision was arbitrary and capricious, thus denying due process.

b. The Board's continual denial of parole based on unchanging factors converts

c. petitioner's sentence to life without possibility of parole, denying due process.

d. _____

e. _____

Result _____Denied_____     Date of Result _March 19, 2007_

Citation of opinion, if any and known _____None given._____

II. Name of Court _____California Court of Appeal_____

**Grounds raised (Be brief and specific):**

a. _____(Same as above)_____

b. _____

c. _____

d. _____

e. _____

Result _____Denied_____     Date of Result _____May 30, 2007_____

Citation of opinion, if any and known _____None given._____

III. Name of Court _____California Supreme Court_____

**Grounds raised (Be brief and specific):**

a. _____(Same as above)_____

b. _____

c. _____

d. _____

e. _____

Result _____Denied_____     Date of Result_____November 28, 2007_____

Citation of opinion, if any and known _____None given._____

(i)  If you answered "No" explain briefly why you have not sought any post-conviction review?

**N/A**

_____

_____

(j)  Is any petition or other post-conviction preceeding now pending in any court?  Yes /‾7  No /X7

_____
(Name and location of Court)

## PART B - TRIAL INFORMATION

4.  Check if any of the following were held in your case?

Arraignment: Yes /X7 No /‾7  Preliminary Hearing: Yes /x7 No /‾7

Motion to Suppress: Yes /‾7 No /X7

5.  Check whether a finding of guilty was made after a plea of

Guilty /‾7        Not Guilty /X7        Nolo Contendere /‾7

Any other plea _____
                                    (Specify)

6.  Check kind of trial:

Jury /X7        Judge alone /‾7

Judge alone on a transcript /‾7

7.  Did you testify at your trial?  Yes /x7 No /‾7

## PART C - GROUNDS FOR RELIEF FROM CONVICTION

State briefly and concisely every ground which you believe supports your claim that you are being held in unlawful confinement.  This means telling the court the facts upon which you rely.  You should avoid legal arguments with numerous case citations.  Thus, what legal right or privilege were you deprived of in your case?  What happened to deprive you of this right?  Who made the error of which you complain?  What did he do wrong?  When did he do it?  If you lack space to state all your grounds, use the back side of the page.

NOTE WELL:  You should state all possible grounds for relief from the conviction described in Part A in this petition.  If you fail to set forth your grounds now, you may bar yourself from presenting such grounds at a later date, or the respondent may assert successfully that a second petition from you is an abuse of the federal habeas corpus remedy.

**8.    Grounds for Relief**    (Note: Petitioner is seeking relief from his 2006 Board of Prison Terms Hearing)

**(a)    Ground One:** The Board's decision was arbitrary and capricious because it was unsupported by any evidence, inapposite to the record and lacked a rational nexus between the factors cited and petitioner's current parole risk, thus denying due process.

**Supporting Facts:** _____

(Please see attached petition)

_____

_____

_____

**(b)    Ground Two:** The Board's continual denial of parole based on unchanging factors illegally converts petitioner's sentence of Life With the Possibility of Parole to Life Without the Possibility of Parole, thus denying petitioner's right to due process.

**Supporting Facts:** _____

(Please see attached petition)

_____

_____

_____

_____

**(c)    Ground Three:** _____

_____

**Supporting Facts:** _____

_____

_____

_____

_____

**9.    If any of the grounds listed were not previously presented to any other court, state briefly which grounds were not so presented and why:**

**N/A**

_____

_____

_____

10.  Supporting cases, if any.  List by name and citation only, the cases which you think are close factually to yours so that it is an example of the error you believe occurred in your case.  Do not discuss the holding or reasoning of these cases:

_____

**(Please see attached petition)**

_____

_____

_____

_____

## PART D - ATTORNEY INFORMATION

11.  Give the name and address of each attorney who represented you in the proceedings attached here.

(a)  Arraignment _Jerrold M. Ladar, Suite 310, 507 Polk St., San Francisco, CA_

(b)  At preliminary hearing __Same as above__

(c)  At time of plea __Same as above__

(d)  At trial __Same as above__

(e)  At sentencing __Same as above__

(f)  On appeal __Same as above__

(g)  Other post-conviction proceeding __same as above__

_____

12.  Was the attorney hired by you or your family?  Yes /_x_7  No /__7

Appointed by the Court?  Yes /__7  No /_x_7

Are you alleging as one ground for relief that your attorney gave you ineffective legal assistance?  If so, whom and at what stage?

__N/A__

13.  If you did not have an attorney represent you, did you represent yourself?  Yes /__7  No /__7  __N/A__

With consent of Court:  Yes /__7  No /__7

14.  Are you represented by an attorney in this petition?  Yes /__7  No /_x_7

If you answered "Yes" give name and address of your attorney:

N/A

_____

_____

WHEREFORE, petitioner prays that the Court grant petitioner

relief to which he may be entitled in this proceeding.

Executed at _San Diego, California_____    Dated: _12/12/0?__

_____
Signature of Petitioner

## FORMA PAUPERIS AFFIDAVIT
(See Instructions of this form)

I hereby apply for leave to proceed with this habeas corpus petition
without prepayment of fees or costs or security therefor. In support
of my application, I state that the following facts are true:

(1) I am the petitioner in said petition, and I believe I am entitled
to redress.

(2) I am unable to pay the costs of said action or give security because:

_____

_____

_____

_____

_____
Signature of Petitioner
(Sign here only if you seek to
proceed without payment of fees)

STATE OF _____)

COUNTY OF _____)

I declare under penalty of perjury that the foregoing is true and correct.

Signed on _____
              (Date)

_____
Signature of Petitioner

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

LESLIE ARTHUR BYRD          )
Petitioner, Pro Se          )     Case No. _____
                            )
        v.                  )
                            )
ROBERT J. HERNANDEZ         )
Warden, RJDCF, et. al.      )     **PETITION FOR WRIT OF HABEAS CORPUS**
                            )     **(Under 28 U.S.C. §2254)**
        Respondents         )
                            )
_____)

**TABLE OF CONTENTS**

|  |  | PAGE |
|---|---|---|
| Table of Authorities |  | ii |
| Table of Exhibits |  | iv |
| INTRODUCTION |  | 1 |
| I. | The Parties | 3 |
| II. | Exhaustion of Administrative and state remedies | 3 |
| III. | Statement of Jurisdiction | 3 |
| IV. | Requirements of Due Process; Standard of Review | 4 |
| PETITIONER'S CONSTITUTIONAL CLAIMS |  |  |
| | Ground #1:  The Board's decision is arbitrary and capricious because it is unsupported by any evidence, inapposite to the record, and lacks any rational nexus between the factors cited and petitioner's current parole risk, thus violating petitioner's state and federal constitutional right to due process. | 5 |
| | Ground #2:  The Board's continual denial of petitioner's parole, based on unchanging factors and contrary to substantial evidence demonstrating change for the better, illegally converts petitioner's term of life with the possibility of parole to life without the possibility of parole, thus violating petitioner's due process rights under both the state and federal constitutions. | 17 |
| Prayer For Relief |  | 26 |
| Verification |  | 27 |
| Declaration of Service By Mail |  | 28 |

1

TABLE OF AUTHORITIES

2  **California Constitution:**

3      Article I, Section 7, Subdivision (a)

4  **United States Constitution:**

5      Fourteenth Amendment

6  **State Administrative Regulations:**

7      California Code of Regulations, Title 15, Division 2

8      California Penal Code §§§1473(a), 3041(a), 3041(b)

9  **State Case Law:**

10      In re Dannenberg (2005) 34 Cal.4th 1061

11      In re Elkins (2006) 144 Cal.App.4th 475

12      In re Lee (2006) 143 Cal.App.4th 1400

13      In re Ramirez (2001) 94 Cal.App.4th 549

14      In re Rosenkrantz (2002) 29 Cal.4th 616

15      In re Scott (2004) 119 Cal.App.4th 871

16      In re Scott (2005) 133 Cal.App.4th 573

17      In re Smith (2003) 109 Cal.App.4th 489

18      In re Smith (2003) 114 Cal.App.4th 343

19      In re Criscione (2007) Santa Clara County Case #71614 (Judicial
                          Notice only)
20

21      Terhune v. Superior Court (1986) 65 Cal.App.4th 864

22  **Federal Case Law:**

23      Biggs v. Terhune (9th Cir., 2003) 334 F.3d 1510

24      Diaz v. Norton (    ) 376 F.Supp. 112

25      Dunn v. U.S. Parole Commission (10th Cir., 1987) 818 F.2d 742

26      Edwards v. Balisok (1987) 520 U.S. 641

27      Environmental Defense Ctr., Inc., v. EPA (9th Cir., 2003) 344 F.3d 832

28      Ellard v. Alabama Bd. of Pardonds & Paroles (11th Cir., 1987 824 F.2d 937

**TABLE OF AUTHORITIES (Cont'd)**

Evans v. Carey (E.D. Cal. 2006) WL 1867543

Greenholtz v. Nebraska Penal Inmates (1979) 442 U.S. 1

Hewitt v. Helms (1983) 459 U.S. 460

Hicks v. Oklahoma (1980) 447 U.S. 343

Irons v. Warden of Cal. St. Prison-Solano (E.D. Cal. 2005) 358
F.Supp.2d 936

Lupo v. Norton (    ) 371 F.Supp. 156

McQuillion v. Duncan (9th Cir., 2002) 306 F.3d 895

Montoya v. U.S. Parole Commission (10th Cir., 1990) 908 F.2d. 635

Morrisey v. Brewer (1972) 408 U.S. 471

Rosenkrantz v. Marshall (C.D. Cal. 2006) 444 F.Supp.2d 1063

Sass v. Cal. Board of Prison Terms (9th Cir., 2006)_F.3d__2006
WL 2506293

Superintendent v. Hill (1985) 472 U.S. 445

United States v. Nixon (1974) 418 U.S. 683

Vargas v. U.S. Parole Commission (9th Cir., 1988) 865 F.2d 191

Vitek v. Jones (1980) 445 U.S. 480

Wolff v. McDonnell (1974) 418 U.S. 539

1

## TABLE OF EXHIBITS

2                                                                    Page(s)

3    EXHIBIT # 1:   2006 Life Prisoner Evaluation Report              1-8

4    EXHIBIT # 2:   2006 Subsequent Parole Consideration Hearing      1-101

5    EXHIBIT # 3:   2005 Life Prisoner Hearing Decision Face Sheet    1

6    EXHIBIT # 4:   2002 California Board of Prison Terms Decision     1-7

7    EXHIBIT # 5:   1996 California Board of Prison Terms Decision     1-4

8    EXHIBIT # 6:   1993 Life Prisoner Hearing Extraordinary Action
                    and Decision                                      1-2

9

10   EXHIBIT # 7:   2006 Psychological Assessment                      1-6

11   EXHIBIT # 8:   2001 Psychological Assessment                      1-7

12   EXHIBIT # 9:   Category "T" Final Report                          1-5

13   EXHIBIT #10:   Letters of Support                                 1-8

14   EXHIBIT #11:   Laudatory / Self-Help / Work Chronos               1-14

15   EXHIBIT #12:   Matrix of Base Terms For Second Degree Murder      1

16   EXHIBIT #13:   Multiple Sclerosis Verification                    1-2

17   EXHIBIT #14:   Board of Prison Terms Statistics                   1-6

18   EXHIBIT #15:   Marin County Superior Court Denial                 1

19   EXHIBIT #16    California Court of Appeal Denial                   1

20   EXHIBIT #17    California Supreme Court Denial                     1

     EXHIBIT #18    In re Criscione                                     1-34

21

22

23

24

25

26

27

28

1

2

3

4

5                    **UNITED STATES DISTRICT COURT**

6              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

7

8

9        LESLIE ARTHUR BYRD            )
         Petitioner, Pro Se           )        Case No. _____
10                                    )
              v.                      )
11                                    )
         ROBERT J. HERNANDEZ          )
         Warden, RJDCF, et. al.       )
12                                    )    **PETITION FOR WRIT OF HABEAS CORPUS**
              Respondents             )    **(Under 28 U.S.C. §2254)**
13   ─────────────────────────────────)

14

15                        **INTRODUCTION**

16       Petitioner, Leslie Arthur Byrd, hereby submits the foregoing **Petition For**

17   **Writ of Habeas Corpus**, alleging that the Board of Prison Hearings (hereinafter

18   the "Board") has violated his constitutional right to Due Process as guaranteed

19   by the Fourteenth Amendment of the United States Constitution.

20       In 1986, petitioner was convicted in Marin County superior Court of

21   murder (second degree) and was sentenced to fifteen years to life (Case #9635).

22   (For a summary of the offense, see Exhibit #1, p.1).

23       Under a 15-to-life sentence, the term is not to be set by the trial

24   court, but is to be determined by the California Board of Prison Hearings.

25   The primary statutes and regulations governing the Board's suitability

26   hearings are Penal Codes §§3041(a) and 3041(b), as well as the California

27   Code of Regulations, Title 15, Division 2 (see in re Rosenkrantz (2002)

28   128 Cal.Rptr.2d pp.137-138).

                                    1

Petitioner attended his initial parole hearing in 1993 and requested

a postponement so that he could complete a Category "T" (therapy) program

(see Exhibit #6, pp.1,2). During subsequent parole hearings in 1996 and 2002,

petitioner was denied parole for 5 and 3 years, respectively. In 2005,

petitioner stipulated to a 1 year denial so that he could obtain an updated

psychological assessment (see Exhibit #3, p.1), and in 2006 petitioner was

denied parole for 3 years. In the foregoing writ, petitioner challenges

the Board's decision at his 2006 hearing, alleging:

1) The Board's decision was arbitrary and capricious because it was

unsupported by any evidence, inapposite to the record, and lacked any

rational nexus between the factors cited and the petitioner's current

parole risk;

2) The Board's continual denial of petitioner's parole, based on

unchanging factors and contrary to substantial evidence demonstrating

change for the better, illegally converts petitioner's term of Life With

The Possibility of Parole to Life Without The Possibility of Parole.

Based on these grounds petitioner believes the Board has violated his

liberty interest in parole and his due process rights  as guaranteed by

the Fourteenth Amendment of the United states Constitution.

I.   **THE PARTIES**

LESLIE ARTHUR BYRD is the petitioner, represented Pro Se, and is

currently incarcerated at the Richard J. Donovan Correctional Facility

in San Diego, California.

ROBERT J. HERNANDEZ is the warden of the Richard J. Donovan Correctional

Facility and currently has legal custody of the petitioner.

JAMES DAVIS is the Chairperson of the Board of Prison Hearings which

is the legal agency responsible for administering petitioner's sentence.

## II.  EXHAUSTION OF ADMINISTRATIVE AND STATE REMEDIES

Effective May 1, 2004, the Board repealed its regulation requiring life-term inmates to file an administrative appeal when challenging Board decisions.  Hence, there are no administrative remedies for petitioner to exhaust.

Petition filed a writ in the state courts, raising the same issues as the instant petition, on March 13, 2007.  These claims were denied by the California Supreme Court on __11/28/07__  (see Exhibits #15, #16 and #17).  Hence, all state remedies have been properly exhausted.

## III.  STATEMENT OF JURISDICTION.

The United states District Court for the Northern District of California has jurisdiction under 28 U.S.C. §2254(a), which states:

> "The Supreme Court, a justice thereof, a circuit judge,
> or a district court shall entertain an application for
> a writ of habeas corpus on behalf of a person in state
> custody pursuant to the judgement of the state court only
> on the grounds that he is in custody in violation of the
> constitution or laws or treaties of the United States."

Petitioner asserts that he is custody in violation of the Constitution of the United States.

The United states District Court for the Northern District of California also has legal jurisdiction under 28 U.S.C. §2254(a) because petitioner has exhausted remedies available in the courts of the state; and also under §2254(d) because the adjudication of petitioner's claims in state court as "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States."

## IV.  REQUIREMENTS OF DUE PROCESS; STANDARD OF REVIEW

1).  The Board must follow its own rules and regulations governing parole suitability hearings Vargas v. U.S. Parole Commission (9th Cir., 1988) 865 F.2d 191, pp. 193-194.

2)  State parole statutes and regulations bestow in inmates a liberty interest in parole protected by due process Mcquillion v. Duncan (9th Cir., 2002) 306 F.3d 895 pp.901-903; In re Rosenkrantz (2002) 128 Cal.Rptr.2d 114.

3)  Petitioner's liberty interest required him to be found suitable for parole because, after his minimum eligible parole date had lapsed, he had been evaluated to no longer pose an unreasonable risk of danger to public safety (Penal Code §3041(a); CCR, Title 15, §§2401, 2402(a)).  United States Supreme Court law holds that states must follow their own penal statutes Hicks v. Oklahoma (1980) 447 U.S. 343.

4)  The Board's decision cannot be arbitrary and capricious and must show a rational nexus between factors cited and stated conclusions In re Sturm (1974) 11 Ca.3d 258; Montoya v. U.S. Parole Commission (10th Cir., 1990) 908 F.2d 635; Dunn v. U.S. Parole Commission (10th Cir., 1987) 818 F.2d 742, 745.

5)  The California Supreme Court holds that the Board may only deny parole to life-term inmates as long as they meet the specified factors on the Board's regulations (e.g., CCR, Title 15, §2402(c) and there is "some evidence" to support the Board's findings In re Rosenkrantz (2002) 128 Cal.Rptr.2d 114, pp.137, 141.  However, U.S. Supreme Court law holds that the "some evidence" standard is an additional requirement of due process, not the only requirement Edwards v. Balistock (1997) 520 U.S. 641, 117 S.Ct. 1584, 1588.

6)  Repeated or continual denial of parole, based on unchanging or static factors, and contrary to substantial evidence demonstrating change for the better, violated a protected liberty interest because it converts the sentence of life-term inmates from "Life With The Possibility of Parole" to "Life Without The Possibility of Parole" Biggs v. Terhune (9th Cir., 2003) 334 F.3d 910.

4

GROUND #1:  **THE BOARD'S DECISION IS ARBITRARY AND CAPRICIOUS BECAUSE IT IS UNSUPPORTED BY ANY EVIDENCE, INAPPOSITE TO THE RECORD, AND LACKS ANY RATIONAL NEXUS BETWEEN THE FACTORS CITED AND PETITIONER'S CURRENT PAROLE RISK, THUS VIOLATING PETITIONER'S STATE AND FEDERAL CONSTITUTIONAL RIGHT TO DUE PROCESS.**

California's parole scheme gives rise to a cognizable liberty interest that is entitled to protection under both state and federal Constitutions In re Rosenkrantz (2002) 29 Cal.4th 616, 621; McQuillion v. Duncan (9th Cir., 2002) 306 F.3d 895, 903; Biggs v. Terhune (9th Cir., 2003) 334 F.3d 910, 914, 915; Sass v. Cal. Bd. of Prison Terms (2006) ___ F.3d ___ 2006  WL 2506393.

Under California state law, one year prior to petitioner's minimum eligible parole release date, petitioner is entitled to appear before the Board to be considered for parole (Penal Codes §§3041(a) and 3041(b). Accordingly, as specified by statute, the Board "shall normally set a parole release date" unless "it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offenses, is such that consideration of the public safety requires a more lengthy period of incarceration..."  In re Ramirez (2001) 94 Cal.App4th 549; 114 Cal.Rptr.2d 381, 393.

The Board has established regulations for determining whether an inmate is suitable or unsuitable for release on parole which are published in the California Code of Regulations, Title 15, Division 2 (hereinafter "CCR").  The relevant sections of the CCR, as applied by the Board at the petitioner's parole hearing, are §§2400-2411.  CCR §2402(a) states, "The panel shall first determine whether a prisoner is suitable for release on parole.  Regardless of the length of time served, a life prisoner shall be found unsuitable if in the judgement of panel the prisoner will pose an unreasonable risk of danger to society if released from prison."  Hence, as specified by statute and regulation, the Board

5

1    shall set a release date unless the inmate currently poses an unreasonable

2    risk of danger to society (see In re Smith (2003) 114 Cal.App.4th 343,370

3    holding "[A] determination of unsuitability is simply shorthand for a

4    finding that a prisoner currently would pose an unreasonable risk of

5    danger if released at this time.").

6        In making its determination, the Board "must be cognizant not only of

7    the factors required by state statute...but also concepts embodied in the

8    Constitution requiring Due Process." Greenholtz v. Nebraska Penal

9    Inmates (1979) 442 U.S. 1, pp.7-8. Furthermore, according to the California

10   Supreme Court, parole decisions "must reflect an individualized

11   consideration of the specified criteria and cannot be arbitrary and

12   capricious." In re Rosenkrantz (2002) 29 Cal.4th 616, 677; see also

13   In re Dannenberg (2005) 34 Cal.4th 1061, 1071, holding Board decisions

14   not based on evidence or relevant factors may deny prisoner their Due

15   Process rights. Our U.S. Supreme Court demands no less, holding "Prisoners

16   are entitled to be free from arbitrary actions of prison officials that

17   affect their constitutionally protected interests." Wolff v. Mc Donnell

18   (1974) 418 U.S. 539, 558; Vitek v. Jones (1980) 445 U.S. 480, pp.488-489.

19   As summarized in Ramirez,

20           "Judicial oversight must be extensive enough to protect
             the limited right of parole applicants to be free from
21           an arbitrary parole decision...and to something more than
             mere pro forma considerations. (citation) The courts may
22           properly determine whether the Board's handling of parole
             applicants is consistent with parole policies established
23           by the Legislature. (citation) While courts must give
             great weight to the Board's interpretation of the parole
24           statutes and regulations, final responsibility for inter-
             preting the law rests with the courts. (citation) Courts
25           must not second-guess the Board's evidentiary findings.
             (citation) However, it is the proper function of judicial
26           review to ensure the Board has honored in a 'practical
             sense' the applicants right to 'due consideration'."
27           (citation) In re Ramirez (2001) 94 Cal.App.4th 549, 564.

28

                                         6

1      **A.  There is not "some evidence" to support the Board's
           decison that the petitioner currently poses an
2           unreasonable risk of danger to society.**

3      According to state and federal law, parole decisions must be supported

4      by some evidence and that evidence must have an "indicia of reliability"

5      In re Rosenkrantz (Id.); Biggs v. Terhune (9th Cir., 2003) 334 F.3d 910, 915.

6      More specifically, "suitability determinations must have some rational

7      basis in fact." In re Elkins (2006)___Cal.Rptr.3d___2006 WL 3072139.

8           It is important that the some evidence standard be properly understood.

9      First, the some evidence standard is an additional requirement of due

10     process, not the only requirement Edwards v. Balisok (1997) 520 U.S. 614,

11     648.  Second, the courts are not to look only at whether some evidence

12     supports the Board's application of any given criteria, but whether the

13     Board's decision contains some evidence that an inmate currently poses

14     an unreasonable risk of danger to society In re Lee (2006)___Cal.Rptr.3d

15     ___2006 WL 2947968, p.4; In re Elkins (2006)___Cal.Rptr.3d___ WL 3072139, p.12.

16          As stated in Rosenkrantz, "the governing statute provides the Board

17     must grant parole unless it determines that public safety requires a

18     lengthier period of incarceration for the individual because of the

19     gravity of the offense  underlying the conviction.  (citation)  And as

20     set forth in the governing regulations, the Board must set a parole date

21     for a prisoner unless it finds, in the exercise of its judgement, after

22     considering the circumstances enumerated in section 2402 [or 2281] of

23     the regulations, that the prisoner is unsuitable for parole." In re

24     Rosenkrantz (2002) 128 Cal.Rptr. 114, 138.  Hence, as required by our

25     state supreme court, the Board must set a parole date unless a prisoner

26     is found unsuitable for parole as specified by statute or regulation.

27          In making the section 3041(b) suitability determination, the Board

28     must consider "[a]ll relevant, reliable information" (CCR §2402(b)),

7

1    including the nature of the commitment offense and behavior before, during

2    and after the crime; the petitioner's social history; mental state;

3    criminal record; attitude toward the crime; and parole plans (CCR §2402(b)).

4    The circumstances tending to show unsuitability for parole include that

5    the inmate 1) committed the offense in a particularly heinous, atrocious

6    or cruel manner; 2) possesses a previous record of violence; 3) has an

7    unstable social history; 4) has previously sexually assaulted another

8    individual in a sadistic manner; 5) has a lengthy history of severe

9    mental problems related to the offense; and 6) has engaged in serious

10    misconduct while in prison (CCR §2402(c) (1)(2)(3)(4)(5) & (6)).

11        At petitioner's 2006 hearing, the Board denied petitioner a parole

12    release date essentially based upon the nature of the crime, stating:

13    "We come to this conclusion first and foremost from the commitment offense

14    itself" (Exhibit #2, p.93). While the Board went on to criticize petitioner's

15    psychological evaluation as "inconclusive" and petitioner's parole plans

16    as lacking "significant specificity and/or documentation" (Exhibit #2, p.98)

17    these reasons cited by the Board do not constitute "some evidence" that

18    petitioner currently poses an unreasonable risk of danger to society.

19    The offense is so old (i.e. over 21 years at the time of the hearing)

20    that it lacks the "indicia of reliability" to indicate that petitioner

21    still poses a current, credible danger (see, for example, In re Elkins

22    Id. at p.12, holding "the predictive value of commitment offense may be

23    very questionable after a long period of time. (Citation)"). Additionally,

24    petitioner suffers from multiple sclerosis, an incurable, progressive

25    debilitating neurological disease which now requires petitioner to use

26    a wheelchair and further diminishes any potential danger to society

27    (Exhibit #13, pp.1,2) In re Lee (2006) 43 Cal.App.4th.

28        Petitioner denies that the psychological assessment prepared for

8

1    Board in 2006 was "inconclusive." The report, completed by Doctor

2    Luisa Fijman, Staff Psychiatrist, includes a clear assessment of

3    petitioner's danger to society, if paroled, stating:

> "Mr. Byrd's violence potential outside a controlled setting
> in the past was considered to have been less than average
> and at present, it is estimated to be reduced from that level.
> If released to the community, he would in all probability
> be likely to continue improvement given his defined set of
> expectations and goals, along with family support. He
> further appears to have internal resources necessary,
> along with the motivation to be productive and contribute
> to helping others." (Exhibit #7, p.6)

9    A psychological assessment completed in 2001 by Doctor Gary Pesavento,

10   Staff Psychologist, concludes:

> "In closing, Mr. Byrd should be removed from the special
> calendar because psychopathology is not related to future
> criminal behavior. Psychological opinion would not
> contribute to a release decision." (Exhibit #8, p.7)

13   The Category "T" Final Report, completed in 1996 by Doctor J. M. Henry,

14   Senior Psychologist, after a 14 month intensive therapy program

15   conducted by a panel of psychiatrists and psychologists, stated: "Mr.

16   Byrd's violence potential outside a controlled setting is considered

17   quite low." (Exhibit #9, p.2)

> "He has frequently discussed his remorse on a formal basis
> and an informal basis in a number of settings. He is
> consistent with his feelings and emotions. In discussing
> remorse for this report, he had to pause a number of times
> to regain his composure. In this writer's opinion, Mr. Byrd's
> remorse is appropriate, pervasive and genuine." (Exhibit #9, p.4)

22   The Category "T" Report concludes:

> "No further individual or group therapy is seen as necessary
> to prepare Mr. Byrd to return to the community."..."It is
> highly likely that this inmate represents a minimal risk to
> society if released." (Exhibit #9, p.4)

1    With regard to the Board's assertion that petitioner's parole plans

2    lacked "significant specificity and/or documentation," petitioner discussed

3    this issue at length with the Board during the hearing (Exhibit

4    The petitioner sought input from the Board regarding the nature of the

5    "specificity" they required and documentation requested was trivial in

6    light of the discussion.  Petitioner notes that, included among his

7    letters of support, is a letter promising financial support for the

8    petitioner upon his release (Exhibit #10, p.1)     Petitioner also notes

9    that, due to his progressive physical disability, any parole plans are

10   and must remain somewhat fluid, depending on the level of petitioner's

11   disability at the time of his parole.

12       As the above facts and arguments indicate, the Board's decision is

13   arbitrary and capricious and violates due process, as guaranteed by both

14   state and federal Constitutions, because there is no evidence that the

15   petitioner currently poses and unreasonable risk of danger to society

16   In re Rosenkrantz (Id.); McQuillion v. Duncan (Id.); Biggs v. Terhune (Id.).

17       B.  The Board's decision is inapposite to the record.

18       The Board's decision is arbitrary and capricious and abrogates due

19   process because it is inapposite to the record that was before them.

20   Factors tending to show suitability for parole are:

21       1) No Juvenile Record.  The prisoner does not have a record of

22   assaulting others as a juvenile or committing crimes with a potential of

23   personal harm to victims;

24       2) Stable Social History.  The prisoner has experienced reasonably

25   stable relationships with others;

26       3) Signs of Remorse.  The prisoner performed acts which tend to

27   indicate the presence of remorse, such as attempting to repair the damage,

28   seeking help for or relieving suffering of the victim, or indicating he

10

1    understands the nature and magnitude of the offense;

2         4) Motivation for Crime.  The prisoner committed his crime as a result

3    of significant stress in his life, especially if the stress has built over

4    a long period of time;

5         5) Battered Woman Syndrome.  At the time of the commission of the

6    crime, prisoner suffered from Battered Woman Syndrome, as defined in

7    Section 2006(b), and it appears the criminal behavior was the result of

8    that victimization;

9         6) Lack of Criminal History.  The prisoner lacks any significant

10   history of violent crime;

11        7) Age.  The prisoner's present age reduces the probability of

12   recidivism;

13        8) Understanding and Plans for Future.  The prisoner has made

14   realistic plans for release or has developed marketable skills that can

15   be put to use upon release;

16        9) Institutional Behavior.  Institutional activities indicate an

17   enhanced ability to function within the law upon release (Cal. Code of

18   Regs., Title 15, §2402).

19        Petitioner believes that, absent Battered Woman Syndrome, he meets

20   the criteria for all of the other factors tending to show suitability

21   for parole.  1) Petitioner has no juvenile record;  2)  Petitioner has

22   been married to the same woman since 1967, was gainfully employed

23   throughout the marriage and has broad support  from family and friends;

24   3) The petitioner has repeatedly expressed remorse for his actions and

25   has indicated that he understands the nature and magnitude of the offense

26   (Exhibit #7,  p.5) (Exhibit #8, pp.5,6) (Exhibit #9, p.3).  Petitioner alleges

27   that significant stress contributed to his behavior.  In addition to the

28   increasing stress brought on by his advancing disease, petitioner was

1    undergoing significant stress at work.  Petitioner was employed as the

2    Loan Supervisor for a bank in Northern California which had approximately

3    45 branches, and was responsible for supervising approximately $700,000,000

4    in loans.  The fear that his advancement in the banking industry would be

5    curtailed, or even ended, should his medical condition be discovered by

6    the bank was the source of increasing stress as his condition slowly

7    deteriorated; 5) Battered Woman Syndrome is not applicable; 6) Lack of

8    Criminal History.  Petitioner has no prior criminal history, whatsoever;

9    7) Age.  Petitioner is 61 years old; 8) Understanding and Plans For the

10   Future.  As previously stated, petitioner has broad family and financial

11   support.  Additionally, petitioner is a college graduate and has in the

12   past demonstrated the ability to earn a living; 9) Institutional Behavior.

13   Petitioner has demonstrated exemplary institutional behavior, as

14   acknowledged by the Board during the hearing (Exhibit #2, p.94), and

15   has participated extensively in self-help groups and has devoted many

16   hours to assisting other inmates (Exhibit #11, pp.2-10).  In addition,

17   petitioner has received laudatory chronos from custody staff (Exhibit

18   and one chrono making a direct recommendation for parole from a Correctional

19   Captain (Exhibit #11, p.1).

20         The Board's decision violates due process because it does not conform

21   with the Board's own regulations (see, for example, Vargas v. U.S. Parole

22   Commission (9th Cir., 1988) 865 F.2d, pp.193-194, holding parole boards

23   are bound to follow their own regulations and...these regulations have

24   the force of law; and Ellard v. Alabama Board of Pardons and Paroles

25   (11th Cir., 1987) 824 F.2d pp. 937,943, holding "[T]he Due Process

26   clause...prohibits the states from negating by their actions rights

27   which they have conferred by their words.")

28         In Rosenkrantz, the state supreme court states, "It is irrelevant

                                         12

1    that a court might determine that evidence in the record tending to

2    establish suitability for parole far outweighs evidence demonstrating

3    unsuitability for parole." In re Rosenkrantz, supra, 128 Cal.Rptr.114, 156.

4    Petitioner disagrees. As stated in Greenholtz, "[t]he behavior of an

5    inmate during confinement is critical in the sense that it reflects the

6    degree to which the inmate is prepared to adjust to parole release."

7    Greenholtz v. Nebraska Penal Inmates (1979) 442 U.S. 1, 15.  More

8    importantly, the ultimate question to be determined by the Board is

9    whether or not a prisoner currently poses an unreasonable risk of danger

10   to society.  A reformed prisoner can in no way be regarded as a danger

11   or threat to the public, and if a prisoner is not a current danger then

12   parole must be granted (Penal Codes 3041(a) and 3041(b)).

13        Finally, the Board's decision is also inapposite to the record

14   because it ignores the "Matrix of Base Terms for Second Degree Murder"

15   as provided in CCR 2402(b) (Exhibit #12, p.1). Given the circumstances, the

16   petitioner's committment offense falls under categories "C-III" on the

17   Matrix (Severe Trauma with No Prior Relationship), which gives a

18   suggested term of 19-20-21 years.  At the time of the hearing, however,

19   petitioner had been incarcerated for over 21 years.  True, the gravity

20   of the offense can serve as the sole reason for denying parole, especially

21   if the offense is particularly egregious (Ramirez, Id.), but even a

22   particularly egregious offense has its limits.  Consider, for example,

23   the case of Rosenkrantz.  The egregiousness of Rosenkrantz's crime as

24   a second degree murder justified denying his parole, but as the state

25   supreme court cautioned, once Rosenkrantz reaches the point where he is

26   serving time for first degree murder denying his parole would be

27   questionable, even under the deferential "some evidence" standard

28   In re Rosenkrantz, supra, 128 Cal.Rptr. at pp. 166-167.  In fact, the

13

1   state supreme court explicitly stated:

2           "The Board's authority to make an exception [to the setting
            of a parole date] should not operate so as to swallow the rule
3           that parole is normally to be granted.  Otherwise, the Board's
            case-by-case rulings would destroy the proportionality
4           contemplated by Penal Code 3041, subdivision (a), and also by
            the murder statutes, which provide distinct terms of life
5           without possibility of parole, 25 years to life, and 15 years
            to life for various degrees and kinds of murder." (Id. at p.161)

6

7   Petitioner has now surpassed the maximum expected term for second degree

8   murder and is, essentially, being considered as having a first degree murder.

9   Furthermore, after long periods of time, the egregiousness of the offense

10  loses its weight and, at some point, may even be illogical to use as

11  justification for denying parole.  As cited in federal law:

12          "It is simply irrational for [the] seriousness of the offense
            to be used first to determine the appropriate guideline period
13          and then to be used again as the stated reason for confining
            a prisoner beyond that guideline period." Lupo v. Norton, 371
14          F.Supp 156, 163.  (See also Diaz v. Norton, 376 F.Supp 112 at
            115 stating, relying on the seriousness of the offense "beyond
15          the appropriate guideline...would not be appropriate because
            the guideline table (matrix) already assesses the seriousness
16          of the offense."

17  Hence, as the above factors and arguments demonstrate, the Board's

18  decision is arbitrary and capricious and violates due process because it

19  is inapposite to the record that was before them during the hearing.

20      **C.    The Board's decision lacks a rational nexus between the
                factors cited and the petitioner's current parole risk.**

21      As stated at the outset of this Ground, "suitability determinations

22  must have some rational basis in fact."  In re Elkins (2006)___Cal.Rptr.3d

23  ___2006 WL 3072139, p.7.  Accordingly, parole decision must be more than

24  a "mouthing on conclusionary words" and have a "reliable factual

25  underpinning" In re Scott (2004) 119 Cal. App.4th 871 (See also  In re

26  Smith (2003) 114 Cal.App.343, 371, holding Board decisions are arbitrary

27  when "no chain of reasoning" exists between "[the] immutable factor of

28  drug use and current parole risk in view of a long period of abstinence.")

                                       14

1   Federal law concurs.  In Dunn, for example, the Tenth Circuit struck down

2   a decision by the U.S. Parole Commission on the grounds that it was

3   arbitrary for the commission to rely on an 18-year-old insanity plea to

4   deny parole, particularly when current mental health evaluation stated

5   the prisoner had no current mental illness Dunn v. U.S. Parole Commission

6   (10 Cir., 1987) 818 F.2d 635 742, 745 (see also Montoya v. U.S. Parole

7   Commission (10th Cir., 1990) 908 F.2d 635, pp. 639-640.

8        A rational nexus may exist, for instance, if a prisoner committed

9   an offense while he was in a gang and current evidence in the record

10  shows that he is still an active gang member or engaging in gang activities;

11  or if a prisoner committed an offense while addicted to drugs and current

12  evidence in the record shows that his addiction is not in remission or

13  he recently used drugs.  But in the present case before the court, there

14  is no evidence that such a nexus exists.  On the contrary, the reasons

15  cited by the Board that the petitioner currently poses an unreasonable

16  risk of danger to society defy logic.   As previously stated, the Board

17  came to its decision "first and foremost from the commitment offense

18  itself." (Exhibit #2, p.93)   The record shows that the petitioner has

19  been a model inmate for over 20 years, meets every single applicable

20  criteria for suitability, and has been forensically evaluated multiple

21  times over a long period of time as having a less than average risk of

22  violent behavior if released to the community.   The Board's reasons for

23  denying petitioner's parole, in fact, clearly meet the definition of

24  "arbitrary" as defined by the Ninth Circuit Court of Appeals, when it stated:

25           An agency has acted in an arbitrary and capricious manner if
         "the agency has relied on factors that Congress has not
         intended it to consider, entirely failed to consider an
26       important aspect of the problem, offered an explanation for
         its decision that runs contrary to the evidence before the
27       agency, or is so implausible that it could not be ascribed
         to a difference in view or the product of the agency expertise."
28       Environmental Defense Ctr., Inc v. EPA (9th Cir., 2003) 344 F.3d
         832, 858.

15

More importantly, according to regulation, parole is to be denied only if petitioner currently poses an <u>unreasonable</u> risk of danger to society (CCR §2402(a)). Petitioner submits that after more than 20 years in prison, and having surpassed the maximum suggested terms for the worst classification of second degree murder; who has programmed in an exemplary manner while incarcerated; who has been forensically evaluated multiple times as posing a minimal risk to the public if released; and who is experiencing deteriorating health due to an incurable and progressive disease, should not be deemed as posing an <u>unreasonable</u> risk of danger to society. Hence, as the above facts and arguments indicate, the Board's decision is arbitrary and capricious and violates due process because there is no rational nexus between the reasons cited for denying parole and petitioner's current parole risk.

**GROUND #2: THE BOARD'S CONTINUAL DENIAL OF PETITIONER'S PAROLE, BASED ON UNCHANGING FACTORS AND CONTRARY TO SUBSTANTIAL EVIDENCE DEMONSTRATING CHANGE FOR THE BETTER, ILLEGALLY CONVERTS PETITIONER'S TERM OF LIFE WITH THE POSSIBILITY OF PAROLE TO LIFE WITHOUT THE POSSIBILITY OF PAROLE, THUS VIOLATING PETITIONER'S DUE PROCESS RIGHTS UNDER BOTH STATE AND FEDERAL CONSTITUTIONS.**

As previously stated, California life-term inmates have a liberty interest entitled to protection under the Due Process clause of the state and U.S. Constitutions In re Rosenkrantz (Id.), McQuillion v. Terhune (Id.), Biggs v. Terhune (Id.).  When an individual has a liberty interest protected by the Fourteenth Amendment, it cannot be arbitrarily denied by State government Vitek v. Jones (1980) 445 U.S. 480, pp. 488-489; Greenholtz v. Nebraska Penal Inmates (1970) 442 U.S. 1; Morrissey v. Brewer (1972) 408 U.S. 471.  Accordingly, "[P]risoners are entitled to be free from arbitrary actions of prison officials that affect their constitutionally protected interests." Wolff v. McDonnell (1974) 418 U.S. 539, 558; Hewitt v. Helms (1983) 459 U.S. 460, 466; see also Superintendent v. Hill (1985) 472 U.S. 445, 457, holding a decision by prison officials cannot be "without support" or arbitrary.  The California Supreme Court concurs, recognizing that Board decisions not based on evidence or relevant factors may deny prisoners their due process rights In re Dannenberg (2005) 34 Cal.4th 1061, 1071. Thus, the touchstone of Due Process is protection of the individual against arbitrary action by the government Wolff v. McDonnell, supra, 418 U.S. at 558.

According to state penal statutes, parole "shall normally" be granted unless a prisoner poses an unreasonable risk of danger to society (Penal Codes §§3041(a) and 3041(b).  At petitioner's 2006 parole hearing, petitioner presented a plethora of evidence that he had undergone substantial change for the better and that he does not currently pose a danger to society.  Yet, in spite of this showing, petitioner was denied parole primarily based on outdated, unchanging and static factors, specifically, the offense itself.

1   (Exhibit #2, p.94). While the Board went on to characterize petitioner's

2   most recent psychological assessment as "inconclusive" (Exhibit #2, p.97)

3   petitioner strongly disagrees and points out that the board has a history

4   of discounting petitioner's favorable psychological evaluations.  At the

5   petitioner's 2002 hearing the Board characterized a psychological evaluation

6   by Staff Psychologist Dr. Gary Pesavento as "not negative"  but asked for

7   a new evaluation stating that some of the issues in the case had not been

8   dealt with very completely (Exhibit #4, p.3).   At petitioner's 1996

9   hearing, the Board characterized a psychological assessment summarizing

10  14 months of intensive therapy as "superficial" and recommended more therapy.

11  (Exhibit #5, p.2) despite a specific finding by a panel of therapists that

12  no further therapy was needed and that petitioner represented a "minimal

13  risk to society if released" (Exhibit #9, p.4). The only other factor

14  cited by the Board in its decision was a statement that petitioner's

15  parole plans lacked "significant specificity and/or documentation"

16  (Exhibit #2, p.98) however at petitioner's 2002 parole hearing the Board

17  stated, "Regarding his parole plans, he appears to have some financial

18  resources and family support.  He certainly has job skills so parole

19  plans aren't a particular issue with the Board."  (Exhibit #4, p.3).

        The Ninth Circuit addressed the constitutional propriety of the

20  Board's reliance on the commitment offense and other static factors in

21  Biggs v. Terhune (9th Cir., 2003) 334 F.3d 910. Biggs was convicted of

22  first degree murder and challenged the Board's decision denying him parole

23  at his initial hearing.  Although the Ninth circuit found no evidence to

24  to support most of the Board's grounds for unsuitability, the court

25  nevertheless affirmed the Board's decision, reasoning "the parole board's

26  sole reliance on the gravity of the offense and conduct prior to

27  imprisonment to justify denial of parole can be initially justified as

28

1    fulfilling the requirements set forth by state law." (Id. at 916).

2    The court cautioned, however, that "Over time...should Biggs continue

3    to demonstrate exemplary behavior and evidence of rehabilitation, denying

4    him parole simply because of the nature of the offense would raise serious

5    questions involving his liberty interest." (Id.)  The Ninth Circuit also

6    stated, "A continued reliance in the future on an unchanging factor, the

7    circumstances of the offense, and conduct prior to imprisonment, run

8    contrary to the rehabilitative goals espoused by the prison system and

9    could result in a due process violation." (Id. at (917).

10        Although the Ninth Circuit did not hold when a due process violation

11    would occur, the California Court of Appeal and several United States

12    District Courts have found that the Board's reliance on unchanging

13    factors and the commitment offense in certain cases violated due process

14    (see, for example, In re Elkins (2006) 144 Cal.App.4th 475, 498, review

15    denied Nov. 8, 2006 ("Given the lapse of 26 years and the exemplary

16    rehabilitative gains made by [the prisoner] over that time, continued

17    reliance on [the] aggravating facts of the crime no longer amount to

18    'some evidence' supporting denial of parole."); In re Lee (2006) 43 Cal.

19    App.4th 1400, 1409 ("Like the Governor, we do not minimize the seriousness

20    of Lee's offense 19 years ago, for which society has legitimately

21    punished him.  No reasonable possibility exists, however, that Lee will

22    reoffend.  Other than his offenses here, he has led a crime-free life.")

23    Id. at 1412 ("Simply from the passing of time, Lee's crimes of almost 20

24    years ago have lost much of their usefulness in foreseeing the liklihood

25    of future offenses than if he had committed them five or ten years ago.");

26    Irons v. Warden of Cal. State Prison-Solano (E.D. Cal. 2005 358 F.Supp.2d

27    936, 947 ("In the instant case, the [Board] has apparently relied on these

28    unchanging factors at least four prior times in finding petitioner

20

1   unsuitable for parole.  Petitioner has continued to demonstrate exemplary

2   behavior and evidence of rehabilitation.  Under these circumstances, the

3   continued reliance on these factors at the 2001 hearing violated due process."

4   Internal citations omitted.); Rosenkrantz v. Marshall (C.D. Cal. 2006)

5   444   F.Supp.2d 1063, 1081-1082 ("In the circumstances of this case, the

6   [Board's] continued reliance on the nature of petitioner's crime to deny

7   parole in 2004 violated due process[.]  [C]ontinued reliance on the

8   unchanging facts of petitioner's crime makes a sham of California's parole

9   system and amounts to an arbitrary denial of petitioner's liberty interest.");

10  Evans v. Carey E.D. Cal. 2006) WL 1867543 at 6 ("Although the Ninth Circuit

11  in Biggs did not explicitly state when reliance on an unchanging factor

12  would violate due process, it makes sense that reliance on such a factor

13  becomes unconstitutional when the factor no longer has a predictive value.")

14      In Elkins, the prisoner was serving a sentence of twenty-five to life

15  after being convicted of first degree murder and robbery, with use of a

16  deadly weapon (Elkins, supra, 144 Cal.App.4th at 479).  He had served

17  twenty-six years (eleven years past his minimum parole date) and had been

18  denied parole at ten prior hearings (Id. at 499-500).  At his eleventh

19  hearing the Board granted Elkins parole, which the Governor subsequently

20  reversed (Id.)  Elkins had received positive psychiatric

21  evaluations, participated in self-help and vocational training, had

22  realistic parole plans, and had only received two disciplinaries during

23  his twenty-six years of incarceration (Id. at 483).  Both the Board

24  denials and the Governor's reversal relied primarily on the gravity of

25  the commitment offense (Id.).  The Elkins court vacated the Governor's

26  decision holding that the Governor's decision to reverse the grant of

27  parole based on the commitment offense lacked "some evidence" that

28  Elkins posed an unreasonable risk of danger (Id. at 502).  The court held

1   that the Governor's reliance on the remote immutable facts of the commitment

2   offense violated Elkin's due process rights (Id. at 500).

3       In Rosenkrantz v. Marshall, the prisoner had been denied parole on six

4   previous occasions on a sentence of seventeen years to life for a

5   conviction of second degree murder with the use of a firearm Rosenkrantz

6   v. Marshall, supra, 444 F. Supp.2d at 1082.  The Board's rationale for

7   finding him unsuitable was based solely on the nature of the commitment

8   offense (Id. at 1084).  However, the court found that "[a]fter nearly

9   twenty years of rehabilitation, the ability to predict a prisoner's future

10   dangerousness based simply on the circumstances of his or her crime is

11   nil." (Id.).  The court held that, after such a long period, the pre-

12   commitment factors had lost all predictive value, and the Board's

13   continued reliance on them to deny parole violated due process "because

14   the facts surrounding the offense do not now constitute 'some evidence'

15   with some 'indicia of reliability' of petitioner's dangerousness." (Id.

16   at 1086).  The court ordered Rosenkrantz released on parole (Id. at 1087-1088).

17       In Irons, the petitioner was serving a sentence of seventeen years to

18   life for second degree murder Irons v. Warden of Cal. State Prison-Solano,

19   supra, 358 F.Supp.2d 936, 939.  In denying parole, the Board relied on

20   the circumstances of the commitment offense, specifically, that he

21   demonstrated a callous disregard for human life and the motive for the

22   crime was trivial (Id. at 944).  The Board found that he had realistic

23   parole plans, no juvenile record, and minimal prior criminal history (Id.).

24   The court additionally found that the circumstances of the crime could

25   never change and therefore the Board could perpetually deny parole or,

26   at best, until some future panel arbitrarily found that the crimes

27   were not so callous or trivial (Id. at 947).  As the court opined, a

28   prisoner's "liberty interest should not be determined by such an arbitrary

22

1  remote possibility." (id.).  The court held that the Board's continued

2  reliance on the facts of the commitment offense violated due process (Id.).

3      The facts of the petitioner's case, although different from Biggs,

4  Elkins, Rosenkrantz and Irons, are in no way less compelling.  Petitioner

5  has an exemplary record and has shown substantial change for the better.

6  Even though petitioner has a college degree and was a successful businessman

7  prior to his incarceration, he has nevertheless obtained extensive

8  training in computer programming (Exhibit #11, pp.12-14).  Petitioner

9  has completed numerous self-help groups and continues to train other

10  inmates as facilitators in conflict resolution through "Hands of Peace"

11  (Exhibit #11, pp. 2-10).  Petitioner has support letters from family and

12  friends and has been forensicly evaluated by multiple psychiatrists and

13  psychologists as having a minimal potential for violence if released to

14  the community (Exhibit #7, p.6) (Exhibit #8, p.6) (Exhibit #9, p.2).  More

15  significantly, petitioner has appeared before the Board on multiple

16  occasions (the most recent being 11 years past his minimum eligible

17  parole release date) and the Board continues to rely on the same, unchanging

18  static factors to deny parole.  If a prisoner's post conviction behavior

19  doesn't carry any weight and his current dangerousness is continually

20  evaluated on the unchanging circumstances of his offense, then there is

21  no difference between life with the possibility of parole and life

22  without the possibility of parole.  A prisoner's offense of more than two

23  decades ago will never change, and using this static factor as the

24  measuring stick to gauge petitioner's current dangerousness means he will

25  always be labeled an unreasonable risk of danger to society.  Like a hamster

26  running on a wheel and never getting anywhere, petitioner will be forever

27  completing one requirement or positive program after another but never get

28  any closer to release.  This makes a mockery of the parole system and, as

24

1    such, violates due process.

2        It might be argues that since petitioner has been scheduled for another

3    consideration hearing in 2009, he could not possibly be serving a sentence

4    of life without the possibility of parole, in which case petitioner would

5    disagree.  The Board routinely disregards the law to follow its own "no

6    parole" policy.  Current statistics support this contention (Exhibit #14,

7    pp.1-6), as well as do a growing number of state and federal cases against

8    the Board and Governor (see, for example, In re Ramirez (2001) 94 Cal.App.

9    4th 549; In re Smith (2003) 109 Cal.App.4th 871; In re Smith (2003) 114

10   Cal.App.4th 343; In re Scott (2004) 119 Cal.App.4th 871; In re Scott (2005)

11   133 Cal.App.4th 573; In re Elkins (2006) 144 Cal.App.4th 475; In re Lee

12   (2006) 143 Cal.App.4th 1400; McQuillion v. Duncan (9th Cir., 2002) 306

13   F.3d 895; Irons v. Warden of Cal. State Prison-Solano (2005) 358 F.Supp.

14   936; Rosenkrantz v. Marshall (2006) 444 F.Supp.2d 1063; Evans v. Carey

15   (E.D. Cal. 2006) WL 1867543). [1]

16       Regardless of the sentence imposed by the courts, in California today

17   life with the possibility of parole is virtually synonymous with life

18   without the possibility of parole.  Hence, as the above facts and

19   arguments clearly show, the Board's continual denial of petitioner's

20   parole based on unchanging, static factors and contrary to substantial

21   change for the better, is arbitrary and capricious and violates due process

22   as guaranteed by both state and federal Constitutions.

23

24   [1] Petitioner requests the Court take Judicial Notice of In re Criscione

25       (Exhibit #18) relative to the statistics developed and analyzed by the

26       Court in the case, and the Court's analysis of the Board's on-going

27       "no parole" policies.

28

### PRAYER FOR RELIEF

Petitioner is without relief save by writ of Habeas Corpus.

WHEREFORE, having made a prima facie case for relief, petitioner prays that the court:

1) Issue the Writ of Habeas Corpus;

2) Issue an Order of Show Cause on respondents as to why relief should not be granted;

3) Make a determination as to whether respondents have violated petitioner's federal constitutional rights to due process;

4) Upon any finding that respondents have unlawfully denied petitioner's liberty interest or violated petitioner's due process rights, order respondents to vacate the decision of petitioner's 2006 parole hearing, hold a new hearing within 30 days, and grant a parole date;

5) Grant any relief necessary to ensure the protection of petitioner's federal constitutional rights.

1

**VERIFICATION**

2

3      I, Leslie Arthur Byrd, do hereby declare the following:

4      I am the petitioner in this action.  I have read the foregoing

5   Petition For Writ of Habeas Corpus and the facts stated therein are

6   true of my own knowledge, except as to matters that are therein

7   stated on my own information and belief, and as to these matters I

8   believe them to be true.

9      I declare under penalty of perjury of the laws of California

10  that the foregoing is true and correct, and that this declaration

11  was executed on ___12/12/07___, at San Diego, California.

12

13

14

15                                   Petitioner, Pro Se

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF SERVICE BY MAIL

I, Sarah Horton, am a resident of San Diego County, in the State of California. I am over the age of eighteen (18) years, and I am not a party to the enclosed action. My address is:

> SARAH HORTON
> 4757 MANSFIELD ST.  APT. B
> SAN DIEGO, CA 92116

On __12/14/07__ , I served the foregoing Petition For Writ of Habeas Corpus, along with the Exhibits thereto, on the parties named herein below, by placing true copies thereof, enclosed in a sealed envelope with the postage thereon fully paid, in the United States Mail in San Diego, California, addressed as follows:

> UNITED STATES DISTRICT COURT
> NORTHERN DISTRICT OF CALIFORNIA
> 450 Golden Gate Avenue
> San Francisco, CA 94102-3483

I declare under penalty of perjury of the laws of California that the foregoing is true and correct, and this declaration was executed on __12/14/07__ , at San Diego, California.

_Sarah Horton_
Sarah Horton

28

1  Leslie Arthur Byrd
   D-30420, F1-05-138L
2  P.O. Box 799001
   San Diego, CA 92179-9001
3

4                                                              **FILED**

5            UNITED STATES DISTRICT COURT              DEC 1 7 2007

6      FOR THE NORTHERN DISTRICT OF CALIFORNIA    RICHARD W. WIEKING
                                                  CLERK, U.S. DISTRICT COURT
7                                                 NORTHERN DISTRICT OF CALIFORNIA

8

9

10  In re:                          )
                                    )
11      **LESLIE ARTHUR BYRD**       )   Case No. _____
        **Petitioner, Pro Se**       )
12                                  )
                                    )
13                                  )          **SBA    (PR)**
                                    )
14      **On Habeas Corpus**         )   LODGEMENT OF DOCUMENTS IN SUPPORT OF
                                    )   PETITION FOR WRIT OF HABEAS CORPUS
15  _____)   (EXHIBITS)

16

17  TO: THE HONORABLE JUDGES OF THE COURT:

18  Petitioner, Leslie Arthur Byrd, represented pro se, hereby lodges with

19  this court **EXHIBITS**, consisting of Exhibits 1 through 18.  These documents

20  are necessary to support the Grounds and Claims which petitioner has

21  raised in his Petition For Writ of Habeas Corpus, pursuant to the United

22  States Rules of Evidence Code.

23                                    Respectfully Submitted,

24

25  Dated: _12/12/07_

26                                    Leslie Arthur Byrd
                                     Petitioner, Pro Se
27

28

## DECLARATION OF RECORDS

I   Leslie Arthur Byrd          , do hereby declare the following:

The attached document, titled "**EXHIBITS**" and consisting of Exhibits 1 through 18 are true and correct copies of the original documents. Where the documents were given to petitioner by another person, petitioner believes them to be true, accurate and correct copies.

I declare under penalty of perjury of both state and federal laws that the foregoing is true and correct, and that this declaration was executed on _____12/12/07_____ at San Diego, CA.

Leslie Arthur Byrd
Petitioner, Pro Se

1

<strong>TABLE OF EXHIBITS</strong>

2                                                                      <u>Pages(s)</u>

3   EXHIBIT # 1:  2006 Life Prisoner Evaluation Report          1-8

4   EXHIBIT # 2:  2006 Subsequent Parole Consideration Hearing  1-101

5   EXHIBIT # 3:  2005 Life Prisoner Hearing Decision Face Sheet  1

6   EXHIBIT # 4:  2002 California Board of Prison Terms Decision  1-7

7   EXHIBIT # 5:  1196 California Board of Prison Terms Decision  1-4

8   EXHIBIT # 6:  1993 Life Prisoner Hearing Extraordinary Action
                  and Decision                                   1-2
9

10  EXHIBIT # 7:  2006 Psychological Assessment                  1-6

11  EXHIBIT # 8:  2001 Psychological Assessment                  1-7

12  EXHIBIT # 9:  Category "T" Final Report                      1-5

13  EXHIBIT #10:  Letters of Support                             1-8

14  EXHIBIT #11:  Laudatory / Self-Help / Work Chronos           1-14

15  EXHIBIT #12   Matrix of Base Terms For Second Degree Murder  1

16  EXHIBIT #13:  Multiple Sclerosis Verification                1-2

17  EXHIBIT #14:  Board of Prison Terms Statistics               1-6

18  EXHIBIT #15:  Marin County Superior Court denial             1

19  EXHIBIT #16:  California Court of Appeal denial              1

20  EXHIBIT #17:  California Supreme Court Denial                1

21  EXHIBIT #18:  In re Criscione                                1-34

22

23

24

25

26

27

28

1  Leslie Arthur Byrd
   D-30420, F1-05-138L
2  P.O. Box 799001
   San Diego, CA 92179-9001
3

4

5              UNITED STATES DISTRICT COURT

6        FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8

9

10  In re:                        )

11      LESLIE ARTHUR BYRD         )      Case No. _____
        Petitioner, Pro Se         )
12                                 )

13                                 )
                                   )
14      On Habeas Corpus           )      DOCUMENTS IN SUPPORT OF PETITION
                                   )      FOR WRIT OF HABEAS CORPUS
15                                 )

16                                 )
                                   )
17  _____    )

18

19                          EXHIBITS

20                           1 - 9

21

22

23

24

25

26

27

28

**EXHIBIT #1**

**2006 LIFE PRISONER EVALUATION REPORT**

## LIFE PRISONER EVALUATION REPORT
## SUBSEQUENT PAROLE CONSIDERATION HEARING # 4
## JULY 2006 CALENDAR

**BYRD, LESLIE**          **D-30420**

## I.    COMMITMENT FACTORS:

A.    **LIFE CRIME:** CT. 1, PC 187 Murder 2nd Degree, Marin County Case Number 9635. Sentence: 15 years to Life. Victim: Cindy Engstrom. Age: 19. Date received by CDC 5/23/86. MEPD 1/5/95.

**Summary of Crime:** On 6/18/85, at approximately 8:45 a.m., Marin County Sheriff's Department was contacted regarding the discovery of a nude female body. The detectives noted that the body had been placed at the location of discovery. The body showed signs of violence. Further investigation disclosed the identity of the victim to be Cindy Engstrom and the cause of death to be asphyxia. On the afternoon of 6/18/85, in the Nicasio Lake are, some articles of clothing belonging to the victim were located. Information collected during the investigation, identified Byrd as the primary suspect in the murder case. During the investigation, Byrd stated to detectives, "I am responsible for what happened. I deserve to be punished".

2.    **Prisoner's Version:** Byrd states that he was experiencing a tremendous amount of stress from his job as Vice President of West America Bank and the state of his declining health due to multiple sclerosis. He feared that if he should lose his job, he would be unable to secure new employment. He found himself unable to cope with these stressors and would drive around at night for hours in a disoriented state of mind. He began seeking out the company of prostitutes to escape from his problems. He had encounters with approximately 10-12 prostitutes before he met Cindy Engstrom, the victim of his Life crime. He invited her to his home while his wife and children attended a Girl Scout function out of town. He states the victim hesitated at first, until he reassured her that he was a respectable member of the community and gave her additional information about himself. While at his home he and the victim participated in acts of bondage, with the victim being bound at the hands and feet. They both were in the bathtub and during their activities he believes the victim became frightened when water went in her mouth and nose. He states she began to scream and he became concerned that his neighbors would hear her through his open windows. He states he then panicked and pushed her under the water to get her to stop. He then got up and closed the windows, returning to a lifeless body in the bath tub. He states he knows he is responsible for her death but at the same time he convinced himself that the victim must have overdosed on drugs. He realized he needed to get out of the situation. He then drove the victim's body to a remote location and left her on the side of the road. He later realized he still had her

Copy sent to Inmate ___ 5/9/06

Exhibit #1 Page 1

clothes in the car and then threw her clothes out about a mile or so from where he left the body.

### 3. **Aggravating/Mitigating Circumstances:**

a) **Aggravating Factors**: The victim was particularly vulnerable due to being in a state of bondage.

b) **Mitigating Factors:** The prisoner had no previous history of criminal behavior.

## II. **PRECONVICTION FACTORS:**

**A. JUVENILE RECORD:** Inmate Byrd has no known prior convictions as a juvenile.

**B. ADULT CONVICTIONS AND ARRESTS:** Inmate Byrd has no known prior convictions as an adult.

**C. PERSONAL FACTORS :** Byrd is a 60 year old, white, first termer. Subject was born in the union of David and Eloise Byrd. Byrd states that he has a normal upbringing. Marital status: Subject has been married since 12-23-67, He has two daughters, ages 33 and 31. Education: Subject attended the University of Arizona and completed a two year course in Graduate Banking Degree through Pacific Coast Banking School in Seattle. Employment: Senior Vice-President at West America Bank in San Rafael. Military Experience: Subject states he never served in the Armed Forces. Medical History: Subject is full duty (no camp). He has asthma and suffers from Multiple Sclerosis. Substances Abuse: Subject states that he is a social drinker, and denies any narcotic use. Gang activity: Subject states that he has never been involved with any type of street gang or club.

## III. **POSTCONVICTIONS FACTORS:** Documents from the previous hearing have been considered and that information remains valid. On 5/31/05 Inmate Byrd appeared before the Board of Prison Terms (BPT) for his Subsequent Parole Consideration Hearing #3. The BPT recommended that he remain Disciplinary Free, participate in Self-Help/Therapy Programs, earn positive chronos, and obtain an updated psychiatric evaluation report (requested by the inmate) and to develop a well defined job plan. He was denied parole for 1 year. During the period of time since his hearing, prisoner's behavior has remained the same in that he continues disciplinary free behavior and actively participates in work assignment as Program Office Clerk. He has participated in BPT's recommended Self-Help/Therapy Program. See attached pre-conviction progress report for details.

Exhibit #1 Page 2

IV.   **FUTURE PAROLE PLANS:** Once paroled, Byrd would like to live with his wife Nancy Byrd, A school teacher who resides at 1865 West Chapalla Drive, Tucson, Arizona. Telephone number (520) 575-1106. However he recognizes that he may be required to parole back to his County of Commitment. He states that if that is the case he would be able to support himself whether employed or not. He states that he has reached the age wherein his pension is fully vested. His condition of Multiple Sclerosis entitles him to full disability benefits. His plans however, is to become involved in the Computer Software Industry. He has been offered employment opportunities from his brother in law, Mr. Barry Sullivan, the owner of a computer software company. Financial support has also been offered by his friend Joseph Caudle. Byrd's personal funds consist of a trust balance of approximately $500.00.

V.   **SUMMARY:**

A.   Prior to release, the prisoner could benefit from: Maintaining a disciplinary free record and continuing his participation in self-help and therapy programs.

B.   This Board Report is based on a 1 hour interview with the inmate and a thorough review of his Central File.

Prepared by,                    Reviewed by,

**C. YORK, CC-I**                **D. TAPIA, CC-II**

Exhibit #1 Page 3

BOARD OF PRISON TERMS                                                    STATE OF CALIFORNIA

# LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

☐ DOCUMENTATION HEARING

☒ PAROLE CONSIDERATION HEARING# 4

☐ PROGRESS HEARING

**INSTRUCTIONS:**
TO CDC STAFF:  DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT.
TO BPT STAFF:  EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY
                ESTABLISHED, i.e., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT.  SEE BPT §§ 2290-2292, 2410 AND 2439.

| POST CONVICTION REPORT | | | |
|---|---|---|---|
| YEAR | BPT | PBR | REASON |
| 1/22/02 to 1/21/03 | | | **PLACEMENT:** Remained housed at RJD-III under Med-A/R custody in the general population assigned to Facility IV Program Office as a Clerk. On 1/22/02 he appeared before the BPT for his Subsequent Parole Consideration Hearing #2. BPT denied parole 3-years and recommended: 1. Remain Disciplinary free 2. Participate in self-help and therapy groups. On 2/5/02 Inmate received a post-board review, Inmate stated that he understood the BPT's recommendation and would comply with them at a later date. Inmate was continued in his current assignment per his request. On 5/21/02 he received an Annual Review.

**CUSTODY:** MED-A/R.

**VOCATIONAL TRAINING:** None noted this time period.

**ACADEMICS:** None noted this time period.

**WORK RECORD:** Facility #4 Program Office Clerk. CDC 101's dated March, June and Sept. 2002 reflects Exceptional Performance in all areas.

**GROUPS ACTIVITES:** CDC 128-B dated 4/8/02, 7/9/02, and 10/22/02 reflects that Byrd served as an inside facilitator for The Hands of Peace/Friends Outside Creative Conflicts Resolution Workshops.

**PSYCHIATRIC TREATMENT:** None noted this time period.

**PRISON BEHAVIOR:** Disciplinary free this time period.

**OTHER:** None noted this time period. |

| CORRECTIONAL COUNSELOR SIGNATURE | | | DATE 4/20/06 | |
|---|---|---|---|---|
| NAME BYRD, LESLIE | CDC NUMBER D-30420 | INSTITUTION RJDCF | CALENDAR 7/2006 | HEARING DATE July 19, 2006 |

BPT 1004 (REV 11/02)

**PAGE 1 OF 5**

Exhibit #1 Page 4

BOARD OF PRISON TERMS
STATE OF CALIFORNIA

# CONTINUATION SHEET: POSTCONVICTION PROGRESS REPORT

| POST CONVICTION REPORT | | | REASON |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 1/22/03 TO 1/21/04 | | | **PLACEMENT:** Remained housed at RJD-III under MED A/R custody in the general population continuing his assignment in Facility #4 as a Program Office Clerk. On 4/23/04 he appeared before UCC for his Annual Review. His Mandatory Minimum Score was established at 28 points level-III per CCR 3375.2 (Life Inmate). He was continued in his present program. |
| | | | **CUSTODY:** MED-A/R. |
| | | | **VOCATIONAL TRAINING:** None noted this time period. |
| | | | **ACADEMICS:** None noted this time period. |
| | | | **WORK RECORD:** Facility #4 Program Office Clerk. CDC 101's dated: Jan. March, June, And Sept. 2003 reflects Exceptional Performances ion all areas. |
| | | | **GROUP ACTIVITIES:** CDC 128-B's dated 2/9/03, 6/15/03 and 11/17/03, Inmate served as an inside facilitator for The Hands of Peace/Friends Outside Creative Conflict Resolution Workshops. |
| | | | **PSYCHIATRIC TREATMENT:** None noted this time period. |
| | | | **PRISON BEHAVIOR:** Disciplinary free this time period. |
| | | | **OTHER:** None noted this time period. |

**ORDER:**

☐ BPT date advanced by _____ months.    ☐ BPT date affirmed without change.

☐ PBR date advanced by _____ months.    ☐ PBR date affirmed without change.

**SPECIAL CONDITIONS OF PAROLE:**

☐ Previously imposed conditions affirmed.

☐ Add or modify _____

☐ Schedule for Progress Hearing on appropriate institutional calendar.

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| BYRD, LESLIE | D-30420 | RJDCF | 7/2006 | July 19, 2006 |

BPT 1004 (REV 11/02)

**PAGE 2 OF 5**

PERMANENT ADDENDU

Exhibit #1 Page 5

BOARD OF PRISON TERMS                                                          STATE OF CALIFORNIA
## CONTINUATION SHEET: POSTCONVICTION PROGRESS REPORT

| POST CONVICTION REPORT | | | |
|---|---|---|---|
| YEAR | BPT | PBR | REASON |
| 1/22/04 TO 1/21/05 | | | **PLACEMENT:** Remained housed at RJD-III under MED A/R custody in the general population continuing his assignment in Facility #4. On 2/18/04 he was re-assigned to Facility #1 Program Office as a Clerk. |
| | | | **CUSTODY:** MED-A/R. |
| | | | **VOCATIONAL TRAINING:** None noted this time period. |
| | | | **ACADEMICS:** None noted this time period. |
| | | | **WORK RECORD:** Facility #1 Program Office Clerk. CDC 101's dated: Jan. Feb. April, July 2004 reflects Exceptional Performances ion all areas. |
| | | | **GROUP ACTIVITIES:** CDC 128-B's dated 6/1/04, completed the advance 22 hour, The Hands of Peace/Friends Outside Creative Conflict Resolution Workshop. |
| | | | **PSYCHIATRIC TREATMENT:** None noted this time period. |
| | | | **PRISON BEHAVIOR:** CDC 114-D dated 11/24/04, Inmate was sent to Ad/Seg for safety reason due to being a victim of a battery. |
| | | | **OTHER:** CDC 128-B dated 2/5/04 Laudatory chrono authored by J.W. Dresbach, Facility IV Captain. |

**ORDER:**

☐ BPT date advanced by _____ months.          ☐ BPT date affirmed without change.

☐ PBR date advanced by _____ months.          ☐ PBR date affirmed without change.

**SPECIAL CONDITIONS OF PAROLE:**

☐ Previously imposed conditions affirmed.

☐ Add or modify _____

_____

☐ Schedule for Progress Hearing on appropriate institutional calendar.

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| BYRD, LESLIE | D-30420 | RJDCF | 7/2006 | July 19, 2006 |

BPT 1004 (REV 11/02)                        **PAGE 3 OF 5**                        PERMANENT ADDENDU

Exhibit #1 Page 6

BOARD OF PRISON TERMS                                                    STATE OF CALIFORNIA

## CONTINUATION SHEET: POSTCONVICTION PROGRESS REPORT

| POST CONVICTION REPORT | | | |
|---|---|---|---|
| YEAR | BPT | PBR | REASON |
| 1/22/05 TO 1/21/06 | | | **PLACEMENT:** Remained housed at RJD-III under MED A/R custody in the general population. |
| | | | **CUSTODY:** MED-A/R. |
| | | | **VOCATIONAL TRAINING:** None noted this time period. |
| | | | **ACADEMICS:** None noted this time period. |
| | | | **WORK RECORD:** Facility #1 Program Office Clerk. CDC 101's dated: Jan., April, July, October 2005, and Jan., 2006 reflects Exceptional Performances in all areas. |
| | | | **GROUP ACTIVITIES:** CDC 128-B's dated 1/31/05, 1/20/06, completed 88 hours of required training for The Hands of Peace/Friends Outside Creative Conflict Resolution Workshop as a facilitator. |
| | | | **PSYCHIATRIC TREATMENT:** None noted this time period. |
| | | | **PRISON BEHAVIOR:** Inmate Byrd has remained disciplinary free since his last board hearing.. |
| | | | **OTHER:** CDC 128-B dated 9/6/05 Laudatory chrono authored by J.W. Dresbach, Facility I Captain. |

**ORDER:**

☐ BPT date advanced by _____ months.     ☐ BPT date affirmed without change.

☐ PBR date advanced by _____ months.     ☐ PBR date affirmed without change.

**SPECIAL CONDITIONS OF PAROLE:**

☐ Previously imposed conditions affirmed.

☐ Add or modify _____

_____

☐ Schedule for Progress Hearing on appropriate institutional calendar.

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| BYRD, LESLIE | D-30420 | RJDCF | 7/2006 | July 19, 2006 |

BPT 1004 (REV 11/02)                    **PAGE 4 OF 5**                    PERMANENT  ADDENDUM

Exhibit #1 Page 7

BOARD OF PRISON TERMS                                                    STATE OF CALIFORNIA
## CONTINUATION SHEET: POSTCONVICTION PROGRESS REPORT

| POST CONVICTION REPORT | | | |
|---|---|---|---|
| YEAR | BPT | PBR | REASON |
| 1/22/06 TO PRESENT (4/20/06) | | | **PLACEMENT:** Remained housed at RJD-III under MED A/R custody in the general population. **CUSTODY:** MED-A/R. **VOCATIONAL TRAINING:** None noted this review period. **ACADEMICS:** None noted this review period. **WORK RECORD:** None noted this review period. **GROUP ACTIVITIES:** Participated in the Hands of Peace/Friends Outside Creative Conflict Resolution Workshop as a facilitator. **PSYCHIATRIC TREATMENT:** None noted this review period. **PRISON BEHAVIOR:** Inmate Byrd has remained disciplinary free this review period. **OTHER:** Received two Laudatory chronos dated 1/27/06, authored by J.W. Dresbach, Facility I Captain, and 1/23/06, authored by Protestant Chaplain, Activity Group Sponsor. |

Prepared By:                                        Reviewed By:


_C. York_                                        _D. Tapia_
C. YORK, CC-I                                     D. TAPIA, CC-II

**ORDER:**

☐ BPT date advanced by _____ months.          ☐ BPT date affirmed without change.

☐ PBR date advanced by _____ months.          ☐ PBR date affirmed without change.

**SPECIAL CONDITIONS OF PAROLE:**

☐ Previously imposed conditions affirmed.

☐ Add or modify _____

_____

☐ Schedule for Progress Hearing on appropriate institutional calendar.

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| BYRD, LESLIE | D-30420 | RJDCF | 7/2006 | July 19, 2006 |

BPT 1004 (REV 11/02)                          **PAGE 5 OF 5**                          PERMANENT ADDENDUM

Exhibit #1 Page 8

EXHIBIT #2

2006 SUBSEQUENT PAROLE CONSIDERATION HEARING

SUBSEQUENT PAROLE CONSIDERATION HEARING

STATE OF CALIFORNIA

BOARD OF PAROLE HEARINGS

In the matter of the Life )
Term Parole Consideration )
Hearing of: )          CDC Number D-30420
)
LESLIE BYRDE )
)
_____)

INMATE
COPY

R.J. DONOVAN CORRECTIONAL FACILITY

SAN DIEGO, CALIFORNIA

JULY 19, 2006

PANEL PRESENT:

Mr. James Davis, Presiding Commissioner
Mr. Alejandro Armenta, Deputy Commissioner

OTHERS PRESENT:

Mr. Leslie Byrde, Inmate
Mr. Daniel Coryn, Attorney for Inmate
Ms. Katherine Mitchell, Deputy District Attorney
Mrs. Linda Engstrom, Victim's Next of Kin
Mr. Scott Engstrom, Victim's Next of Kin
Mr. William Engstrom, Victim's Next of Kin
Ms. Maryann Diaz, Correctional Counselor
Correctional Officers Unidentified

CORRECTIONS TO THE DECISION HAVE BEEN MADE

_____ No        See Review of Hearing
_____ Yes       Transcript Memorandum

Stacy Wegner, Peters Shorthand Reporting

Exhibit #2 Page  1

ii

## INDEX

|  | PAGE |
|---|---|
| Proceedings | 1 |
| Case Factors | 10 |
| Pre-Commitment Factors | 15 |
| Post-Commitment Factors | 45 |
| Parole Plans | 28 |
| Closing Statements | 70 |
| Recess | 90 |
| Decision | 91 |
| Adjournment | 98 |
| Transcriber Certification | 99 |

--oOo--

Exhibit #2 Page   2

Case 3:08-cv-00651-JM-AJB     Document 1     Filed 04/09/2008     Page 62 of 80
Case 4:07-cv-06375-SBA     Document 2-2     Filed 12/17/2007     Page 4 of 38

1

1          **P R O C E E D I N G S**

2          **PRESIDING COMMISSIONER DAVIS:**  This is a

3     subsequent parole consideration hearing for

4     Leslie Byrde, CDC number D-30420.  Today's date

5     is July 19th, 2006.  We're located at R.J.

6     Donovan Correctional Facility.  The inmate was

7     received on May 23rd, 1986, from Marin County.

8     The life term began on May 23rd, 1986, with a

9     minimum eligible parole date of January 5th,

10    1995.  The controlling offense for which the

11    inmate was committed is murder second, case

12    number MAR-9635, count one, Penal Code Section

13    187 second.  The inmate received a term of 15

14    years to life.  This hearing is being tape

15    recorded, and for the purposes of voice

16    identification, we'll each state our first and

17    last name, spelling the last name.  And when it

18    reaches you, Mr. Byrde, if you'll also give us

19    your CDC number, please?

20          **INMATE BYRDE:**  Yes.

21          **PRESIDING COMMISSIONER DAVIS:**  I'll start

22    and move to my left.  I'm James Davis, D-A-V-I-

23    S, Commissioner.

24          **DEPUTY COMMISSIONER ARMENTA:**  My name is

25    Alejandro Armenta, A-R-M-E-N-T-A, Deputy

26    Commissioner.

27.         **INMATE BYRDE:**  Leslie Byrde, B-Y-R-D-E, D-

Exhibit #2 Page   3

1    30420.

2        **ATTORNEY CORYN:**  Daniel Coryn, C-O-R-Y-N,

3    attorney for Mr. Byrde.

4        **DEPUTY DISTRICT ATTORNEY MITCHELL:**

5    Katherine Mitchell, M-I-T-C-H-E-L-L.

6        **MRS. ENGSTROM:**  Linda Engstrom, E-N-G-S-T-

7    R-O-M, mother of Cindy.

8        **PRESIDING COMMISSIONER DAVIS:**  Thank you.

9        **MR. SCOTT ENGSTROM:**  Scott Engstrom, E-N-G-

10   S-T-R-O-M, brother of the victim.

11       **MS. DIAZ:**  Maryann Diaz, D-I-A-Z,

12   Correctional Counselor II.

13       **MR. WILLIAM ENGSTROM:**  William Engstrom, E-

14   N-G-S-T-R-O-M, father of the deceased.

15       **PRESIDING COMMISSIONER DAVIS:**  Thank you.

16   Let the record also reflect that we're joined by

17   a correctional officer who is here for security

18   purposes only and will not be actively

19   participating in the hearing.  Mr. Byrde, in

20   front of you in the laminated piece of paper is

21   the American's with Disabilities Act statement.

22   Would you please read that aloud, sir?

23       **INMATE BYRDE:**  In front of me.  I can't see

24   out this eye, so --

25           The American's with Disabilities Act is

26           a law to help people with disabilities.

27           Disabilities are problems that make it

Exhibit #2 Page  4

1         harder for some people to see, hear,

2         breathe, talk, walk, learn, think,

3         work, or take care of themselves than

4         it is for others.  No one can be kept

5         out of public places or activities

6         because of a disability.  If you have a

7         disability, you have the right to ask

8         for help to get ready for your BPT

9         hearing, get to the hearing, talk, read

10        forms and papers and understand the

11        hearing process.  BPT will look at what

12        you ask for to make sure that you have

13        a disability that is covered by the ADA

14        and that you have asked for the right

15        kind of help.  If you do not get help,

16        or if you don't think you got the kind

17        of help you need, ask for BPT 1074

18        Grievance Form.  You can also get help

19        to fill it out.

20    **PRESIDING COMMISSIONER DAVIS:**  Thank you.

21    Our records indicate that in cooperation with

22    the staff in the institution on March 28th,

23    2006, you reviewed and signed a BPT Form 1073

24    indicating that you have multiple sclerosis.  Is

25    that the reason for the wheelchair?

26        **INMATE BYRDE:**  Yes, sir.

27        **PRESIDING COMMISSIONER DAVIS:**  And the

Exhibit #2 Page  5

1  wheelchair is something that you have all the

2  time?

3      INMATE BYRDE:  Yes, sir.

4      PRESIDING COMMISSIONER DAVIS:  And that you

5  had it available to you to make your way to the

6  hearing today?

7      INMATE BYRDE:  Yes, sir.

8      PRESIDING COMMISSIONER DAVIS:  All right.

9  And I see that you wear glasses.  And they are

10  sufficient for you to read?

11     INMATE BYRDE:  Yes.

12     PRESIDING COMMISSIONER DAVIS:  And you've

13  had those -- you've had the ability to -- or

14  you've had those available to you in reviewing

15  your Central File and all the other documents in

16  preparation for this hearing?

17     INMATE BYRDE:  Yes.

18     PRESIDING COMMISSIONER DAVIS:  All right.

19  You're able to hear me all right?

20     INMATE BYRDE:  Yes.

21     PRESIDING COMMISSIONER DAVIS:  And of

22  course, you made your way by way of the

23  wheelchair.  Is there any reason that you can

24  think of that you would not be able to actively

25  participate in this hearing?

26     INMATE BYRDE:  No, sir.

27     PRESIDING COMMISSIONER DAVIS:  All right.

Exhibit #2 Page  6

1   Now, you indicated that you were -- had

2   difficulty seeing out of your right eye?

3       INMATE BYRDE:  Yes, sir.

4       PRESIDING COMMISSIONER DAVIS:  And is that

5   something that's been longstanding?

6       INMATE BYRDE:  Yes, sir.  It's part of the

7   multiple sclerosis.  It gradually makes you go

8   blind.

9       PRESIDING COMMISSIONER DAVIS:  Okay.

10      INMATE BYRDE:  My left is still, knock on

11  wood, halfway decent shape.  My right eye is

12  maybe 50 percent.  I can't read with the right

13  eye.

14      PRESIDING COMMISSIONER DAVIS:  All right.

15  And everything else -- we're all squared away

16  otherwise, correct?

17      INMATE BYRDE:  Yes, sir.

18      PRESIDING COMMISSIONER DAVIS:  And Counsel,

19  you're satisfied with that as well?

20      ATTORNEY CORYN:  Yes.

21      PRESIDING COMMISSIONER DAVIS:  Thank you.

22  This hearing is being conducted pursuant to

23  Penal Code Sections 3041 and 3042 and the rules

24  and regulations of the Board of Prison Terms

25  governing parole consideration hearings for life

26  inmates.  The purpose of today's hearing is to

27  once again consider the number and nature of the

Exhibit #2 Page  7

1    crimes for which you were committed, your prior

2    criminal and social history, and your behavior

3    and programming since your commitment. Now,

4    we've had the opportunity to review your Central

5    File and your prior transcripts, and you'll be

6    given an opportunity to correct or clarify the

7    record as we proceed. We will reach a decision

8    today and inform of whether or not we find you

9    suitable for parole and the reasons for that

10   decision. If you are found suitable for parole,

11   the length of your confinement will be explained

12   to you. Nothing that happens in today's hearing

13   will change the findings of the Court. The

14   Panel is not here for the purpose of retrying

15   your case. We're here for the sole purpose of

16   determining your suitability for parole. Do you

17   understand that, sir?

18        **INMATE BYRDE:** Yes, sir.

19        **PRESIDING COMMISSIONER DAVIS:** All right.

20   Your hearing will be conducted in two phases.

21   First, I will discuss with you the crime for

22   which you were committed, as well as your prior

23   criminal and social history. Commissioner

24   Armenta will then discuss with you your progress

25   since your commitment, your counselor's report,

26   your psychological evaluation, parole plans, and

27   any letters of support or opposition as they may

Exhibit #2 Page  8

1  exist.  Once that's concluded, the

2  Commissioners, the District Attorney then your

3  attorney will have an opportunity to ask you

4  questions.  Questions that come from the

5  District Attorney will be asked through the

6  Chair then you will respond back to the Panel

7  with your answer.  Next, the District Attorney

8  and then your attorney will have an opportunity

9  to make a final closing statement, followed by

10  your statement, which should be focused on why

11  you believe that you are suitable for parole,

12  followed by statements from the victim's next of

13  kin.  California Code of Regulations states that

14  regardless of time served a life inmate shall be

15  found unsuitable for and denied parole, if in

16  the judgment of the Panel the inmate would pose

17  an unreasonable risk of danger to society if

18  released from prison.  Now, you have certain

19  rights.  Those rights include the right to a

20  timely notice of this hearing, the right to

21  review your Central File, and the right to

22  present relevant documents.  Now, Counsel, are

23  you satisfied that your client's rights have

24  been met to date?

25      **ATTORNEY CORYN:**  Yes, I am.

26      **PRESIDING COMMISSIONER DAVIS:**  Thank you.

27  You have an additional right, and that is to be

Exhibit #2 Page  9

Case 3:08-cv-00651-JM-AJB    Document 1    Filed 04/09/2008    Page 69 of 80
Case 4:07-cv-06375-SBA    Document 2-2    Filed 12/17/2007    Page 11 of 38

8

1  heard by an impartial Panel. Now, you've heard

2  Commissioner Armenta and I introduce ourselves

3  today. Do you have any reason to believe that

4  we would not be impartial?

5      INMATE BYRDE: No, I don't.

6      PRESIDING COMMISSIONER DAVIS: Thank you.

7  You will receive a written copy of your decision

8  today. That decision becomes effective within

9  120 days. A copy of the decision and a copy of

10 the transcript will be sent to you, and you will

11 have 90 days from that date to appeal if you so

12 desire. You are not required to admit to your

13 offense or discuss your offense. However, this

14 Panel does accept the findings of the Court to

15 be true. In fact, the Board has eliminated its

16 appeal process. If you disagree with anything

17 in today's hearing, you have the right to go

18 directly to court with your complaint.

19 Commissioner Armenta, are we going to be dealing

20 with anything from a confidential file today?

21     DEPUTY COMMISSIONER ARMENTA: No, we are

22 not.

23     PRESIDING COMMISSIONER DAVIS: All right.

24 Thank you. I'm going to pass a checklist of

25 documents to both counsel. If you would please

26 review that to make sure that we're both --

27 we're all operating off the same list of

Exhibit #2 Page 10

Case 3:08-cv-00651-JM-AJB    Document 1    Filed 04/09/2008    Page 70 of 80
Case 4:07-cv-06375-SBA    Document 2-2    Filed 12/17/2007    Page 12 of 38

9

1    documents.

2       **DEPUTY DISTRICT ATTORNEY MITCHELL:**  I have

3    these.  Thank you.

4       **PRESIDING COMMISSIONER DAVIS:**  Thank you.

5       **ATTORNEY CORYN:**  Yes, I have these

6    documents.  Additionally, I have some chronos --

7       **INMATE BYRDE:**  Those are duplicates.

8    Basically, the things that should be -- the

9    chronos are not duplicates, but the tops of all

10   these are letters just in case they were lost.

11      **ATTORNEY CORYN:**  Yeah.

12      **PRESIDING COMMISSIONER DAVIS:**  All right.

13   Is that all the additional documents that you

14   have for us today?

15      **ATTORNEY CORYN:**  Yes.  Mr. Byrde said it

16   might be duplicative, but we just want to make

17   sure that --

18      **DEPUTY COMMISSIONER ARMENTA:**  That's fine.

19      **PRESIDING COMMISSIONER DAVIS:**  We'll take a

20   look at that compared to what we have and review

21   it at the appropriate time.  And I'm sure Mr.

22   Armenta will cover this as well, but if for some

23   reason we miss something, please let us know.

24   I'm going to go ahead and mark that checklist of

25   documents as Exhibit One.  Any preliminary

26   objections, Counsel?

27      **ATTORNEY CORYN:**  None.

Exhibit #2 Page 11

1       PRESIDING COMMISSIONER DAVIS:  All right.

2   Will your client be speaking with us today?

3       ATTORNEY CORYN:  Yes.

4       PRESIDING COMMISSIONER DAVIS:  All right.

5   Then would you raise your right hand then, sir?

6   Do you solemnly swear or affirm that the

7   testimony you are about to give at this hearing

8   will be the truth, the whole truth, and nothing

9   but the truth?

10      INMATE BYRDE:  I do.

11      PRESIDING COMMISSIONER DAVIS:  Thank you.

12  All right.  Absence objection I want to

13  incorporate by reference the probation officer's

14  report, pages two through six, and refer to the

15  July 2006 calendar board report for the crime

16  summary.  Starting on page one, paragraph one,

17  it's a summary of crime.

18          On 6/18/85 at approximately 8:45 a.m.

19          Marin County Sheriff's Department was

20          contacted regarding the discovery of a

21          nude female body.  The detective noted

22          that the body had been placed at the

23          location of discovery.  The body showed

24          signs of violence.  Further

25          investigation disclosed the identity of

26          the victim to be Cindy Engstrom, E-N-G-

27          S-T-R-O-M, and the cause of death to be

Exhibit #2 Page 12

1          asphyxia.  On the afternoon of 6/18/85

2          in the Casino Lake area some articles

3          of clothing belonging to the victim

4          were located.  Information collected

5          during the investigation identified

6          Byrde as the primary suspect in the

7          murder case.  During investigation

8          Byrde stated to detectives, "I am

9          responsible for what happened.  I

10          deserve to be punished."

11     There's your version here as well, but I

12 think, Mr. Byrde, since you have chosen to speak

13 with us today, I'll let you go ahead and tell us

14 your version rather than read it into the

15 record.  Why don't you tell us what happened on

16 that a day.  First of all, did you commit this

17 crime?

18     **INMATE BYRDE:**  Yes, sir, I did.

19     **PRESIDING COMMISSIONER DAVIS:**  And tell us

20 what happened.

21     **INMATE BYRDE:**  It's been a long time.  They

22 didn't make me do this last time, or that I can

23 recollect.  Ms. Engstrom and I were at my home

24 for purposes of sexual liaison.  I suggested

25 that we try bondage situation in the bathtub.

26 She agreed.  She actually had known that, about

27 the bondage, before she went to the house.  I

Exhibit #2 Page 13

12

1   talked to her the night before.  When we were in

2   the bathtub having sex I think she panicked.

3   She started yelling and struggling.  I panicked.

4       **PRESIDING COMMISSIONER DAVIS:**  Was that

5   because her mouth and nose were beginning to go

6   under water?

7       **INMATE BYRDE:**  No, sir, I don't think so.

8   I think she might of gotten water in her mouth

9   and nose from the splashing around, and that

10  might of caused what happened, but I mean, I

11  wasn't holding her down.  But anyway, she did

12  panic.  She started yelling, and I was -- my

13  windows were wide open.  We were close to

14  neighbors.  I mean, I wasn't like -- I mean, I

15  just freaked.  I didn't -- I pushed her under

16  the water.  Apparently, I hit her because she

17  was bruised.  I have no specific memory of

18  holding her under water or anything like that,

19  but obviously it went by in a flash for me.  It

20  just went by in a flash.  I'm obviously

21  responsible.  She was in a helpless situation.

22  Whether she panicked or not, it was my fault.

23      **PRESIDING COMMISSIONER DAVIS:**  So her hands

24  -- now, her hands and feet were tied?

25      **INMATE BYRDE:**  They were initially.  She

26  pulled them loose while she was struggling.

27  They weren't tied that tight, but they were in -

Exhibit #2 Page 14

13

1  - they had I guess, football tape, I guess you

2  could call it, white football type, and she

3  pulled them all loose.  Police found the tape

4  with the rest of the stuff and it was unbroken.

5      PRESIDING COMMISSIONER DAVIS:  If her hands

6  had been loose, she would of been able to lift

7  herself out of the bathtub.

8      INMATE BYRDE:  I mean, during the struggle

9  she pulled herself loose, but I obviously had

10  hit her and knocked her out or done something or

11  pushed her under water.  I mean, whatever

12  happened to her happened because I did it.  I

13  mean, there's no question about that.  It's just

14  that I don't -- I didn't -- I didn't do it

15  intentionally.  I mean, I'm responsible.  I

16  didn't set out to injure her, but when she

17  panicked, I think I panicked, and all I wanted

18  her to do was shut up.

19      PRESIDING COMMISSIONER DAVIS:  The

20  probation officer's report on page two, second

21  paragraph, indicates signs of violence were

22  noted on the body, including bruises from her

23  forehead, the backs of her hands, and swelling

24  over her left eye, markings of her left ankle

25  and wrist indicating some kind of tying or

26  constriction having been placed around her

27  ankles and wrists.  Dr. Jindrich, J-I-N-D-R-I-C-

Exhibit #2 Page 15

Case 3:08-cv-00651-JM-AJB    Document 1    Filed 04/09/2008    Page 75 of 80
Case 4:07-cv-06375-SBA    Document 2-2    Filed 12/17/2007    Page 17 of 38

14

1  H, found the cause of death to be asphyxia.

2  Also observed varying types of trauma to the

3  body including bruising over the victim's right

4  eye, her forehead, her left eye, inside her

5  upper lip, a large area of bruising on top of

6  her head and behind her left ear.  On top of the

7  victim's right hand and wrist was observed

8  recent bruising and also depression of the skin

9  suggesting some kind of binding having been

10  wrapped around her wrist.  The doctor also

11  observed bruising on the victim's right and left

12  ankles.  Also observed evidence of forcible

13  compression on the victim's neck but was unable

14  to definitely state what actually caused the

15  strangulation resulting in the victim's death as

16  there was also evidence of drowning.  Sounds to

17  me like there was a lot of -- there was a lot of

18  force being exerted here?

19      INMATE BYRDE:  Well, her wrists were tied

20  to her ankles.  That's exactly how those bruises

21  took place.  In other words, her right wrist was

22  taped to her right ankle.  Her left wrist was

23  taped to her left ankle, so her wrist and ankles

24  would of been bruised as she pulled out.  We

25  also inside the bathtub, and it wasn't a round

26  tub, it's a rectangular square tub, thrashed in

27  there, and I'm quite she got some bruises there

Exhibit #2 Page 16

Case 3:08-cv-00651-JM-AJB    Document 1    Filed 04/09/2008    Page 76 of 80
Case 4:07-cv-06375-SBA    Document 2-2    Filed 12/17/2007    Page 18 of 38

15

1    too, but also I'm quite sure I hit her in the

2    head or shoved her head.  I mean, I don't have a

3    specific memory of punching or anything like

4    that, but I do have a memory of shoving her

5    underwater and telling her to be quiet or trying

6    to get her to be quiet.

7        **PRESIDING COMMISSIONER DAVIS:**  All right.

8    In terms of arrests, there are no -- there's no

9    prior juvenile history and no adults arrest

10    prior to the instant offense.  In terms of a

11    social history, you were born in Los Angeles.

12    Your father was a career naval officer.  You

13    believed your father to be a remote person,

14    reserved, quiet, non-emotional, and controlling.

15    You describe your mother as an alcoholic.  A

16    very bright woman who was -- you described as a

17    housewife and someone who taught school while

18    you were in Hawaii.  By the way, if I say that

19    doesn't strike you as accurate or you want to

20    make a clarification, please let me know.  Are

21    we correct so far?

22        **INMATE BYRDE:**  Pretty much.  I've softened

23    my opinion of my father in the last 20 years.

24        **PRESIDING COMMISSIONER DAVIS:**  Why do you

25    think you reflected on him this way at this

26    particular time?

27        **INMATE BYRDE:**  Well, I think maybe he

Exhibit #2 Page 17

1   softened and I softened, and we've come together

2   a little bit.

3       PRESIDING COMMISSIONER DAVIS:  Do you keep

4   in contact now?

5       INMATE BYRDE:  Yes, sir.  He lives in

6   Carlsbad, and he visits regularly.

7       PRESIDING COMMISSIONER DAVIS:  Okay.

8       INMATE BYRDE:  He's 88 years old, and so he

9   comes down.

10      PRESIDING COMMISSIONER DAVIS:  You indicate

11  that your mother was an insomniac who slept

12  until noon, also an alcoholic and drank -- went

13  to bed a about 5:00 a.m., slept until noon, and

14  then started drinking at 5:00 p.m. and would

15  drink a full bottle of gin in one evening?

16      INMATE BYRDE:  Every day.

17      PRESIDING COMMISSIONER DAVIS:  And let your

18  sister and you to take care of yourselves -- or

19  you and your sisters pretty much take care of

20  yourselves?

21      INMATE BYRDE:  Yes, sir.

22      PRESIDING COMMISSIONER DAVIS:  Do you still

23  keep in contact with your sisters?

24      INMATE BYRDE:  Yes, sir.

25      PRESIDING COMMISSIONER DAVIS:  And where do

26  they live?

27      INMATE BYRDE:  One of them lives in Orange

Exhibit #2 Page 18

Case 3:08-cv-00651-JM-AJB    Document 1    Filed 04/09/2008    Page 78 of 80
Case 4:07-cv-06375-SBA    Document 2-2    Filed 12/17/2007    Page 20 of 38

17

1 County. One of them lives in Scottsdale,

2 Arizona.

3    **PRESIDING COMMISSIONER DAVIS:** Okay. And

4 you keep in contact by letters?

5    **INMATE BYRDE:** By letters. The one from

6 Orange County visited a couple months ago, and

7 we write.

8    **PRESIDING COMMISSIONER DAVIS:** Okay. You

9 had a fairly good relationship with both of your

10 sisters growing up, particularly your younger

11 sister. Is that still the case?

12    **INMATE BYRDE:** Yes, sir, that's the one in

13 Orange County.

14    **PRESIDING COMMISSIONER DAVIS:** Your mother

15 died in 1977 by drowning in the family swimming

16 pool. There was some assumption that perhaps

17 she blacked out and just drown?

18    **INMATE BYRDE:** She had -- in addition the

19 her alcoholism, she smoked at least two packs of

20 cigarettes every day, and she used to go

21 swimming in her pool by herself, which was not

22 the smartest thing to do. That's probably what

23 happened. That's what the doctor said. She

24 probably had a little stroke and blacked out or

25 something.

26    **PRESIDING COMMISSIONER DAVIS:** The father

27 is now living -- you said he's now living in

Exhibit #2 Page 19

18

1  Oceanside?

2      INMATE BYRDE:  La Costa.

3      PRESIDING COMMISSIONER DAVIS:  La Costa.

4  He remarried?

5      INMATE BYRDE:  Yes, sir.

6      PRESIDING COMMISSIONER DAVIS:  You

7  graduated from Arcadia High School in Arizona in

8  1963, went to the University of Arizona where

9  you have a BS in business administration.  And

10 you took some graduate courses, including a two-

11 year course in banking?

12     INMATE BYRDE:  Yes, sir.

13     PRESIDING COMMISSIONER DAVIS:  You were

14 employed by the Arizona Bank in Phoenix, Arizona

15 in 1971 through '83 and left there to take a

16 better job with the West America Bank?

17     INMATE BYRDE:  Correct.

18     PRESIDING COMMISSIONER DAVIS:  As a senior

19 vice president?

20     INMATE BYRDE:  Correct.

21     PRESIDING COMMISSIONER DAVIS:  Where you

22 managed a portfolio of about seven million

23 dollars --

24     INMATE BYRDE:  700 million.

25     PRESIDING COMMISSIONER DAVIS:  700 million.

26 Okay.  They left out a few zeros in this

27 process.

Exhibit #2 Page 20

Case 3:08-cv-00651-JM-AJB    Document 1    Filed 04/09/2008    Page 80 of 80
Case 4:07-cv-06375-SBA    Document 2-2    Filed 12/17/2007    Page 22 of 38

19

1      INMATE BYRDE:  I was in charge of all the

2  loans for the entire bank.

3      PRESIDING COMMISSIONER DAVIS:  Okay.

4  Including also some teaching at Pema Junior

5  College (phonetic)?

6      INMATE BYRDE:  Yes, sir.

7      PRESIDING COMMISSIONER DAVIS:  And you're

8  active in the community during this time.  You

9  were treasurer of the National Cystic Fibrosis

10  Foundation?

11      INMATE BYRDE:  Just the Arizona chapter.

12      PRESIDING COMMISSIONER DAVIS:  The Arizona

13  chapter.  Why the cystic fibrosis?  What was the

14  interest in that?

15      INMATE BYRDE:  Actually, I had a friend who

16  had a child with cystic fibrosis and asked me if

17  I could get involved.

18      PRESIDING COMMISSIONER DAVIS:  The director

19  of the American Red Cross for the Southern

20  Arizona Chapter for '81 to '82, and you were

21  involved in the Kiwanis Club in raising money

22  for Boy Scouts, Big Brothers, Heart Association

23  and so on?

24      INMATE BYRDE:  Yes, sir.

25      PRESIDING COMMISSIONER DAVIS:  It's

26  interesting to juxtapose all of against what the

27  District Attorney and some of the information at

Exhibit #2 Page 21