cal_____

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Leslie Arthur Byrd,<br><br>     Petitioner,<br>v.<br><br>Robert J. Hernandez, Warden,<br><br>     Respondent. | Civil No.08cv651 JM (AJB)<br><br>**REPORT AND RECOMMENDATION DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

  Petitioner, Leslie Arthur Byrd, a state prisoner proceeding *pro se*, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a parole decision of the California Board of Parole Hearings. Upon a complete review of the record and careful consideration of the arguments presented, the Court **RECOMMENDS** that the petition for writ of habeas corpus be **DENIED** and **DISMISSED.**

### Background

  In 1986, Petitioner was convicted of second degree murder and sentenced to a prison term of fifteen years to life. (Petition at 2.) At his most recent parole hearing on July 19, 2006, the California Board of Parole Hearings ("Board") denied him parole for three years.[1] (Notice of Lodgment ("Lodgment") 1 at 97.)

---

[1] Petitioner had previously been denied parole in 1996 and 2002. (Petition at 15.)

On March 13, 2007, Petitioner filed a petition for writ of habeas corpus in the Marin County Superior Court. (Lodgment 2.) The petition was denied on March 19, 2007 without any reasoning. (Lodgment 3.) On April 4, 2007, Petitioner filed a petition for writ of habeas corpus before the Court of Appeal, First Appellate District, Division Two. (Lodgment 4.) On May 30, 2007, the Court of Appeal denied the petition without comment. (Lodgment 7.) On June 18, 2007, Petitioner filed a petition for writ of habeas corpus before the California Supreme Court. (Lodgment 8.) The California Supreme Court denied the petition without comment or citation on November 28, 2007. (Lodgment 9; Ans. at 1.) On December 12, 2007, Petitioner filed a petition for writ of habeas corpus in the Northern District of California. On April 9, 2008, the petition was transferred to this district. On June 11, 2008, Respondent filed a motion to stay the case pending issuance of a mandate in Hayward v. Marshall, 512 F.3d 536 (2008). On July 1, 2008, the Court granted Respondent's request for a stay and stayed the matter pending a decision in Hayward. On April 22, 2010, the Ninth Circuit issued a decision *en banc* in Hayward v. Marshall, 602 F.3d 546 (9th Cir. 2010). On May 6, 2010, the Court lifted the stay and set a briefing schedule. Respondent filed an Answer on July 9, 2010. Petitioner filed a Traverse on July 23, 2010.

## Discussion

**A.      Fourteenth Amendment Right to Due Process**

      **1.      Legal Standard**

Petitioner alleges that his due process rights were violated at his parole hearing when he was denied parole. Specifically, Petitioner claims that the Board's decision was arbitrary and capricious by failing to satisfy the "some evidence" standard in concluding that Petitioner could not be found suitable for parole based on the commitment offense.

The Court may entertain a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A writ of habeas corpus is the sole remedy when a prisoner challenges the fact or duration of confinement, and seeks immediate or speedier release from that confinement. Preiser v. Rodriguez, 411 U.S. 475, 498 (1973); Wolff v. McDonnell, 418 U.S. 539,

554 (1974). As amended, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") now reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was <u>contrary to</u>, or involved an <u>unreasonable application</u> of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).

To obtain federal habeas relief, Petitioner must satisfy either § 2254(d)(1) or § 2254(d)(2). See Williams v. Taylor, 529 U.S. 362, 403 (2000). The threshold question is whether the rule of law was clearly established at the time petitioner's state court conviction became final. Id. at 406. Clearly established federal law, as determined by the Supreme Court of the United States "refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 71 (2003). However, Ninth Circuit case law may be "persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established.'" Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000). Only after the clearly established Federal law is identified can the court determine whether the state court's application of that law "resulted in a decision that was contrary to, or involved an unreasonable application of" that clearly established Federal law. See Lockyer, 538 U.S. at 71-72.

A state court decision is "contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." Williams, 529 U.S. at 405-406. "A state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context

3

where it should apply." Id. at 407.  Under Williams, an application of federal law is unreasonable only if it is "objectively unreasonable." Id. at 409.  Further, a state court's decision results in a "decision that was based on an unreasonable determination of the facts in light of the evidence presented in State court proceeding" if it "is so clearly incorrect that it would not be debatable among reasonable jurists." Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997) (citations omitted).

In making such a determination under AEDPA, the court looks to the state's last reasoned decision.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision.  Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991).

When a federal habeas court is faced with reviewing a state court denial for which there is no reasoned decision, however, the deferential standard under § 2254(d) cannot be applied because there is "nothing to which we can defer." Luna v. Cambra, 306 F.3d 954, 960 (9th Cir. 2002).  Under such circumstances, "[f]ederal habeas review is not *de novo* . . . but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law." Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

A prisoner has no constitutional or inherent right to be conditionally released before the expiration of a valid sentence.  Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979).  The Court held that the Constitution only requires an opportunity to be heard and a statement telling the prisoner why he was not paroled.  Id. at 16.  The Court limited its holding by establishing that where a state's statute uses language, which creates an expectancy of release when or unless certain findings are made, some measure of constitutional protection arises.  Id. at 12.

Recently, the Ninth Circuit, in an *en banc* decision, concluded "there is no federal constitutional requirement that parole be granted in the absence of 'some evidence' of future dangerousness or anything else." Hayward v. Marshall, 602 F.3d 546, 561 (9th Cir. 2010).  However, the Ninth Circuit held that the California state parole scheme creates a liberty interest in parole release that is entitled to protection under the due process clause.  Id. at 561-62.  Under California law, the Board's denial of parole must be supported by "some evidence" of future dangerousness to the public safety.  Id. at 562.  The Ninth Circuit stated that courts in this circuit must only decide "whether the California judicial

4

1  decision . . . rejecting parole was an 'unreasonable application' of the California 'some evidence'
2  requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" Id.
3  at 563.  Since Hayward, several Ninth Circuit cases have followed and complied with the holding in that
4  case.  See Pirtle v. Cal. Bd. of Prison Terms, –F.3d –, 2010 WL 2732888 (9th Cir. July 12, 2010); Cooke
5  v. Solis, 606 F.3d 1206, 1213 (9th Cir. June 4, 2010) ("[D]ue process challenges to California courts'
6  application of the 'some evidence' requirement are cognizable on federal habeas review under
7  AEDPA."); Pearson v. Muntz, 606 F.3d 606 (9th Cir. May 24, 2010).

8       Respondent objects and disagrees with the holding in Hayward and argues that this Court should
9  not follow the holding in Hayward because the *en banc* decision is not binding on this Court.  Specifi-
10 cally, Respondent contends that Petitioner received all due process rights that were due him under
11 Greenholtz which only requires an opportunity to be heard and a statement of reasons for the decision.
12 442 U.S. at 1.  Respondent further argues that even if Petitioner has a state created liberty interest in
13 parole, there is no basis in United States Supreme Court jurisprudence to impose a state judicial standard
14 of review as a federal due process protection under AEDPA.[2]

15      Even if this Court disagrees with a decision of the Ninth Circuit, this Court may not disregard the
16 *en banc* court's directives.  See Hart v. Massanari, 266 F.3d 1155, 1170 (9th Cir. 2001) (stating that
17 district judge may not "disagree with his learned colleagues on his own court of appeals who have ruled
18 on a controlling legal issue"); Zuniga v. United Can Co., 812 F.2d 443, 450 (9th Cir. 1987) ("District
19 courts are, of course, bound by the law of their own circuit").  "Circuit law binds all courts within a
20 particular circuit, including the court of appeals itself.  Thus, the first panel to consider an issue sets the
21 law not only for all the inferior courts in the circuit but also future panels of the court of appeals." Hart,
22 266 F.3d at 1171.

23      Contrary to Respondent's argument, this Court on federal habeas review must decide "whether
24 the California judicial decision . . . rejecting parole was an 'unreasonable application' of the California
25 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the
26 evidence.'"  Hayward, 603 F.3d at 563.

---

[2] The Court notes that the respondent in Pearson v. Muntz presented similar arguments as the Respondent in this case and those arguments were rejected by the Ninth Circuit.  Pearson v. Muntz, 606 F.3d 606, 608-09 (9th Cir. 2010).

5

**2.     Arbitrary and Capricious**

In the petition, Petitioner claims that the Board's decision was arbitrary and capricious because its decision was based mainly on the commitment offense and the other factors the Board used are inapposite to the record. Respondent opposes.

Under California law, prisoners serving an indeterminate life sentence, like Petitioner, become eligible for a parole date after serving minimum terms of confinement required by statute. See In re Dannenberg, 34 Cal. 4th 1061, 1070 (2005); see also Cal. Penal Code § 3041(a). California law provides that the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration" for the prisoner. Cal. Penal Code § 3041(b). Here, Petitioner's minimum eligible parole date, as the Board noted, was January 5, 1995. (Lodgment 1 at 1.) Petitioner's most recent parole hearing was held on July 19, 2006 and the Board was required to determine whether the public safety required a longer period of incarceration for Petitioner.

The Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors that are set forth in the California Code of Regulations. In re Lawrence, 44 Cal. 4th 1181, 1204 (2008). The relevant regulations provide that "a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison."[3] Cal. Code Regs., tit. 15, § 2402(a). These factors are meant to serve as "general guidelines," giving the Board latitude in the weighing of the importance of the combination of factors present in each particular case. Id., § 2402(b).

---

[3]The Code of Regulations list factors tending to indicate whether or not an inmate is suitable for parole. Cal. Code Regs. tit 15, § 2402(c)-(d). The circumstances tending to show an inmate's unsuitability are (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) a previous record of violence, particularly if assaultive behavior occurred at an early age; (3) an unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct. Id., § 2402(c). The circumstances tending to show suitability are (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law. Id., § 2402(d).

6

1    The California Supreme Court in In re Lawrence emphasized that the "fundamental consideration in parole decisions is public safety" and that "the core determination of 'public safety' under the statute and corresponding regulations involves an assessment of an inmate's current dangerousness." 44 Cal. 4th at 1205-06. Thus, in weighing the parole suitability factors in an inmate's case, the Board must consider only the factors "relevant to predicting whether the inmate will be able to live in society without committing additional antisocial acts." Id.

Here, the California courts did not provide a reasoning for their decisions. (Lodgment Nos. 3, 7, 9.) Accordingly, the Court conducts "an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law." See Delgado, 223 F.3d at 982.

On July 19, 2006, the Board held a parole hearing. (Lodgment 1.) After a review of all the information, the Board determined that Petitioner was not "suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." (Id. at 91.) The Board based its decision on 1) the cruel and dispassionate manner in which the murder was committed; 2) Petitioner's lack of significant specificity about his parole plans; 3) an inconclusive psychological report that did not address the facts contained in the probation officer's report; 4) opposition from the District Attorney from Marin County and letters of objection from the Marin County Sheriff's Department and retired Judge Savitt, who was the trial judge that presided over the case; and 4) Petitioner's lack of real remorse and weak acceptance of the crime. (Id. at 94-98.)

The Board based its decision not solely on the commitment offense but also on other factors. First, the Board looked at the cruel and dispassionate manner in which the murder was committed and the exceptionally callous disregard for human suffering. (Id. at 94-95.) According to Petitioner, he was engaged in bondage sex with the victim tied up in the bathtub when the victim panicked and started yelling and struggling. (Id. at 11-12.) When she started yelling, he panicked and pushed her under the water. (Id. at 12.) Her hands and feet were initially tied but she pulled them loose while she was struggling. (Id. at 12-13.) Petitioner states that he does not remember what happened but he must have hit her and knocked her out or pushed her under water. (Id. at 13.) He said he panicked because the windows were open and he did not want the neighbors to hear her yelling. (Id. at 12.) His wife and two daughters were at an overnight Girl Scout camp. (Id. at 25.)

7

According to the probation officer's report, there were signs of violence including bruises on her forehead, the backs of her hands, swelling over her left eye, right eye, inside her upper lip, a large area of bruising on top of her head and behind her left ear, and markings on her ankles and wrists as if something were constricting them. (Id. at 13-14.) There was also evidence of forcible compression on the victim's neck so it was not clear whether the death was caused by strangulation or drowning. (Id.)

Petitioner also chose to dump her nude body in a rural driveway. (Id. at 67.) Interestingly, the driveway belonged to a doctor who was in default on his loan with the bank that Petitioner worked at. (Id.) He then drove many miles away to a bridge over a creek and threw the victim's possessions and clothes into the creek. (Id. at 76.)

At trial, it was revealed that Petitioner had homicidal hateful fantasies involving women that he discussed over several months with various prostitutes that he retained. (Id. at 73.) The most graphic fantasy that he shared with a prostitute was one of watching a woman drown and seeing the fear in her eyes as the water rose up over her face. (Id.) The Court concludes that the record supports the Board's decision that the murder was committed in a cruel and dispassionate manner and exhibited an exceptionally callous disregard for human suffering.

The Board also commented on Petitioner's lack of remorse. Although Petitioner accepted responsibility for the crime, the Board concluded that Petitioner has a weak acceptance or a dismissive acceptance of the crime so that the panel could not conclude that there was real remorse for the crime. (Id. at 97.) The Board also added that Petitioner "mitigated a lot of what happened that night, and you almost made it sound like it was her fault." (Id. at 97-98.) Based on a review of the parole hearing transcript, the Court concludes that the record supports the Board's decision that Petitioner lacked remorse over the crime he committed.

In In re Shaputis, 44 Cal. 4th 1241, 1261 (2008), the California Supreme Court held that there was some evidence to support the Governor's determination of reversing the Board of Parole hearings' grant of parole that the petitioner remained a threat to public safety. The court concluded that the commitment offense was "especially aggravated" and Petitioner's lack of insight and failure to take responsibility was sufficient to meet the "some evidence" standard. Id. at 1261. The court also noted that despite petitioner's many years of sobriety, advanced age and chronic health problems suggesting that petitioner will never relapse into violent conduct and does not remain a risk, the court's review is

8

limited to ascertaining whether there is "some evidence" in the record to support the Board's decision. Id. at 1260.

Here, although Petitioner received praise for his work in prison, had been disciplinary free and is wheelchair bound due to multiple sclerosis, the Court looks only at whether there is "some evidence" in the record to support the Board's decision. See id. The Board looked at the commitment offense and Petitioner's lack of remorse and that satisfies the "some evidence" standard to support the Board's decision. See In re Shaputis, 44 Cal. 4th at 1261. Further, the Board provided other reasons that Petitioner "will pose an unreasonable risk of danger to society if released from prison." Cal. Code Regs., tit. 15, § 2402(a). The Board stated that Petitioner lacked specific plans for parole. He did not provide a letter from any relative in California that stated that he could live with them. (Id. at 42-44.) Although he wants to be paroled in Arizona to live with his wife, Petitioner failed to fully investigate administratively how that could be possible. (Id. at 43.) The Board also found the psychological report inconclusive as it failed to address the homicidal sexual fantasy issues that were in the probation officer's report. In addition, not only was there opposition from the District Attorney from Marin County and letters of objection from the Marin County Sheriff's Department and retired Judge Savitt, who was the trial judge that presided over the case, but there were also 37 letters in opposition to Petitioner's release. (Id. at 28.) Based on these factors, the record provides "some evidence" that Petitioner is a danger to society if released. See In re Lawrence, 44 Cal. 4th at 1204.

Accordingly, after an independent review of the record, the Court concludes that the Board's conclusion that there was "some evidence" of future dangerousness was not an unreasonable application of the California "some evidence" requirement and the decision was not based on an unreasonable determination of the facts in light of the evidence. See Hayward, 602 F.3d at 563. Accordingly, the Court RECOMMENDS that the claim that the Board's decision was arbitrary and capricious in violation of Petitioner's due process rights be DENIED.

### 3. Board's Decision Based on Unchanging Factors

Petitioner argues that the Board's denial based on unchanging factors illegally converts his prison term from life with the possibility of parole to life without the possibility of parole. Respondent argues that the Board's decision was not based solely on unchanging factors and did not convert his sentence to life without parole.

9

The California Supreme Court has recently indicated that unchanging factors such as the commitment offense and pre-incarceration history are permissible where those immutable factors are probative of Petitioner's current dangerousness. In re Lawrrence, 44 Cal. 4th at 1221. ("In sum, the Board or the Governor may base a denial-of-parole decision upon the circumstances of the offense, or upon other immutable facts such as an inmate's criminal history, but some evidence will support such reliance only if those facts support the ultimate conclusion that an inmate continues to pose an unreasonable risk to public safety").

However, as discussed above, the Board's denial was not based on the unchanging factors of the circumstances of the offense or his background. The Board looked to several factors including his lack of remorse for the crime, the inconclusive psychological report, the numerous letters of nonsupport, and Petitioner's lack of specific parole plans. Accordingly, the Court RECOMMENDS that the claim that Petitioner's due process rights were violated because the Board's denial was based on unchanging factors be DENIED.

**Conclusion**

Based on the foregoing, the undersigned Magistrate Judge recommends that the petition for writ of habeas corpus be **DENIED** and **DISMISSED**. This report and recommendation is submitted by the undersigned Magistrate Judge to the United States District Judge assigned to this case, pursuant to the provisions of Title 28, United States Code, section 636(b)(1).

**IT IS ORDERED** that no later than **September 10, 2010**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **September 24, 2010**. The parties are advised that failure to file

//
//
//
//
//

objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

DATED: August 6, 2010

_____
Hon. Anthony J. Battaglia
U.S. Magistrate Judge
United States District Court